**STATE of Maine**

v.

**Richard S. FOSTER.**

Supreme Judicial Court of Maine.

Argued Oct. 30, 1989.

Decided Dec. 7, 1989.

Michael E. Povich, Dist. Atty. (orally), Ellsworth, for plaintiff.

Jerome B. Goldsmith (orally), Linscott, Slater, Goldsmith & Rair, Bangor, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

COLLINS, Justice.

On March 2, 1989, Defendant–Appellant Richard S. Foster was convicted of Criminal Threatening With the Use of a Dangerous Weapon (Class C), in violation of 17–A M.R.S.A. § 209 (1983),[1] by the Superior Court (Hancock County, *Browne, A.R.J.*) after a jury-waived trial. Foster appeals to the Law Court, alleging five counts of error. We affirm the conviction by the Superior Court.

The facts are largely undisputed. Foster owns a lot in a subdivided tract of land. Foster's lot was conveyed subject to a 50–foot right-of-way paved with gravel. The right-of-way, which crosses the entire width of Foster's lot, was established to be used for all usual purposes by owners of other lots in the subdivision. On July 11, 1988, a construction worker, Randall Perci-

val, acting with the permission of an owner of an interior lot of the subdivision, attempted to drive a bulldozer over the 50–foot right-of-way crossing Foster's lot to reach a construction site on the interior lot. As Percival approached the right-of-way at the edge of Foster's property, Percival saw Foster leaning against the side of his trailer, 50 to 75 feet away, pointing a rifle at him. Percival immediately stopped the bulldozer and backed up, afraid that Foster might shoot him. Foster continued to aim the gun at Percival until Percival backed out of sight. No words were exchanged, and Foster did not discharge the rifle. Foster testified that the rifle was unloaded, and that his sole intention was to stop the bulldozer so that it would not "damage the surface of [his] driveway."

Testimony showed that a contractor had run a bulldozer down the right-of-way over Foster's land nine months before the incident giving rise to this case. Foster sent a $60 bill to the contractor for alleged damages to the road caused by the bulldozer. The contractor refused to pay the bill and testified that bulldozers would not harm the gravel road, but would only "[m]ake little marks in it, that's all."

On March 2, 1989, the Superior Court convicted Foster of Criminal Threatening With the Use of a Dangerous Weapon, in violation of 17–A M.R.S.A. § 209. The Court found that Foster knew he did not have absolute ownership rights to the right-of-way, and found that Foster's threatening use of the rifle was unreasonable within the circumstances. Foster appealed the conviction to the Law Court.

We first address Foster's argument that there was no factual basis to support the Superior Court's finding that Foster understood that his rights to the right-of-way crossing his property are limited. The Superior Court stated:

> Now, as far as [Foster's] property, again, he understands that it isn't his. He may own the fee, but there is a

another person in fear of imminent bodily injury.

right-of-way over it which he shares with others.... So he knows that his rights in that property are somewhat limited, that although he may own the fee, the right-of-way is shared with others, and this inhibits the same—or should inhibit one from this kind of activity.

■ A trial court's findings of fact will not be set aside by the Law Court unless the findings are clearly erroneous because there is no competent evidence in the record to support them. *Solmitz v. Maine School Administrative District No. 59,* 495 A.2d 812, 817 (Me.1985); *Wyman v. Osteopathic Hospital of Maine,* 493 A.2d 330, 334 (Me.1985); *Chase v. Burrell,* 474 A.2d 180, 182 (Me.1984).

The Superior Court's finding was supported by competent evidence in the record. On cross-examination, Foster admitted that he knew that the 50–foot right-of-way conveyed in his deed was "for all purposes," that Mr. Kimball and his invitees have "every right to drive on that right-of-way," and specifically that a contractor hired by another subdivision landowner "would have as much right to use the right-of-way as anyone else." Additionally, the Superior Court had before it as evidence the final deed to Foster's land, which described the right of way. Foster admitted that he was familiar with the document.

■ We next consider Foster's argument that at trial he raised the justification of defense of property, pursuant to 17–A M.R. S.A. § 105 (1983). Section 105 provides in pertinent part:

Use of force in property offenses:

A person is justified in using a reasonable degree of non-deadly force upon another when and to the extent that he reasonably believes it necessary to prevent what is or reasonably appears to be an unlawful taking of his property, or criminal mischief, or to retake his property immediately following its taking....

17–A M.R.S.A. § 105.

Foster presents three arguments based upon the section 105 defense. We do not address these arguments because there was no factual basis to support a reasonable belief that either an unlawful taking or a criminal mischief was about to occur. As demonstrated above, Foster knew that he had no right to prevent others from using the right-of-way in a lawful manner.

■ Finally, we consider Foster's argument that he lacked the criminal intent necessary to commit the crime of criminal threatening because he had no intent to place Percival in fear, but rather "use[d] a threat in a conditional manner to prevent damage to his property." The thrust of Foster's argument is that Foster never intended to put Percival in fear of being shot, but rather Foster intended his action to convey to Percival that Percival should have no fear because Foster had no intention of shooting Percival if Percival did not come onto Foster's property. This argument is meritless. Whether a defendant possessed the requisite intent to commit a crime is a question for the trier of fact. *State v. Bushey,* 425 A.2d 1343, 1345 (Me. 1981). As noted above, a trial court's findings of fact will not be set aside by the Law Court unless the findings are clearly erroneous because there is no competent evidence in the record to support them. *Solmitz,* 495 A.2d 812. The Superior Court's determination that Foster had the necessary intent to commit the crime of criminal threatening was supported by sufficient evidence and was not clearly erroneous. Foster testified on cross-examination that he knew his action would scare Percival. Foster testified that it was "true" that, "it would be perfectly safe to say that the person at the other end of [the gun] would have been in deep fear that he's going to be shot." Percival testified that he was "scared" because he thought that Foster would shoot him. Clearly Foster intended to keep Percival from driving over the right-of-way by placing Percival in fear of being shot; had Foster's action not served to place Percival in such fear, Foster's gesture would have been useless.

The entry is:

Judgment affirmed.

All concurring.

■■■■■■