**STATE of Maine**

v.

**Thomas FOY.**

Supreme Judicial Court of Maine.

Argued March 3, 1995.

Decided Aug. 1, 1995.

R. Christopher Almy, Dist. Atty., Jeffrey M. Silverstein (orally), Asst. Dist. Atty., Bangor, for the State.

J. Hilary Billings (orally), Bangor, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Thomas Foy appeals from a judgment of conviction of arson, 17–A M.R.S.A. § 802 (1983 & Supp.1994), entered in the Superior Court (Penobscot County, *Kravchuk, J.*) following a jury trial. Foy contends that the Superior Court (Penobscot County, *Mead, J.*) erred in finding there was probable cause for the police to arrest him for setting fire to the building and in denying his motion to suppress the evidence obtained as a result of the police department's use of a trained arson dog. He also contends, *inter alia,* that the trial court erred in admitting statements he made to two reporters because the State did not provide him with discovery of the statements. Finding no error with the suppression court's rulings or with the trial court's admission of his statements to the reporters, we affirm the judgment.

On October 14, 1992, a fire occurred at an apartment house in Dexter. Stewart Jacobs and James Ellis, investigators with the State Fire Marshall's Office, examined the scene two hours after the fire was reported. They

determined that the fire had been deliberately set with the use of an accelerant based on burn patterns, witness interviews, and a primary indication by Amy,[1] a dog trained to detect hydrocarbons. This conclusion was confirmed by a chemical analysis of samples taken from the building.

Foy was at the scene when the first firefighters arrived and was running up and down the street for most of the day. He was agitated and anxious, and stood out from the rest of the spectators "as being the most bizarre." While Jacobs was interviewing a witness, Foy approached him and said he "was right there when the fire started and where were the cops." He also was overheard saying, "I did it. I did it," as he was going up the street and was observed putting a shirt that he had been wearing in a garbage bag in the back of his pickup truck.

Foy was arrested by Ellis later that day. At the police department, he was seated in a chair with two uniformed officers standing next to him, and sniffed by Amy for hydrocarbons. Amy twice "indicated on" both of Foy's sneakers and his left pant leg. Jacobs took Foy's sneakers and placed them in sealed cans for laboratory tests. A hydrocarbon analysis of the sneakers was positive for the presence of kerosene.

Pursuant to Foy's M.R.Crim. 41A motion, the suppression court denied Foy's motion to suppress the sneaker evidence after concluding that there was probable cause to effect a warrantless arrest of Foy and the dog-sniff did not offend any constitutionally protected right of privacy.

At the trial, the State called Susan Farley-Young, a reporter, to testify about contacts she had with Foy on October 13 and 14. Foy had contacted her several times on the day preceding the fire regarding a story about police corruption. On October 14, Foy called to tell her that there was a fire, "he was the first person on the scene, and he was very angry that [she wasn't] there covering the story." Foy portrayed his role in the fire situation as a hero. In addition, Farley-Young testified about a phone conversation she had with Foy a week after the fire, during which he told her "he wanted to get help," but did not "feel he was getting the kind of help he needed," and that "he had done some things that he regretted," and was "upset about what his family was going through." [2]

The court overruled Foy's objection that Farley-Young's testimony about the post-fire conversation unfairly surprised him, was unduly prejudicial, and was a discovery violation. The court also overruled Foy's objection to showing the jury, in rebuttal to Foy's testimony, part of an interview of Foy taped by Craig Colson, another reporter, on the day of the fire, because it was first made available to the defense on the first day of the trial.

## I. Suppression Motion

Foy contends that the court erred in finding that the police had probable cause to arrest him. We review this factual finding only for clear error, *State v. Anderson*, 447 A.2d 827, 829 (Me.1982), and will uphold it if there is competent evidence in the record to support it. *State v. Foster*, 566 A.2d 1084, 1086 (Me.1989).

"Probable cause to arrest exists whenever facts and circumstances within the knowledge of the police and of which there was reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee had committed the crime. The information determining the existence of probable cause ... includes all the information known to the police." *State v. Candage*, 549 A.2d 355, 360 (Me.1988) (citation omitted). The determination is based on an objective standard, not on whether the particular officer believed he had probable cause to arrest. *State v. Enggass*, 571 A.2d 823, 825 (Me.1990).

---

1. Amy is trained to sit when she first detects the presence of hydrocarbons. On the command of "show me," she will place her nose at the point of the source of the smell. The training is based on a food reward technique that trains her every day. In addition, she undergoes blind testing at least once a year, the most recent test having occurred several weeks prior to Foy's arrest. Amy has never failed a blind test.

2. At the time, Foy was at the Bangor Mental Health Institute as a condition of his bond.

■ In this instance, the suppression court found that the police had probable cause to arrest Foy based on the following facts: (1) the fire had been intentionally set with the use of an accelerant, (2) Foy was at the fire scene when the fire started, (3) Foy was overheard saying "I did it," (4) Foy was nervous and ran off during an interview with an officer, and (5) Foy was observed taking off his shirt and putting it in a garbage bag in his truck. This evidence objectively supports the court's finding and we will not disturb it.

Since we conclude that there was probable cause to arrest Foy, we find no error in the denial of his motion to suppress the evidence obtained as a result of the search of Foy at the police station[3] and the seizure of his sneakers.

■ A search conducted incident to a lawful arrest is a recognized exception to the general rule that a warrant be obtained in order to conduct a search. *Gustafson v. Florida,* 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456 (1973); *United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973); *State v. Parkinson,* 389 A.2d 1, 11–12 (Me.1978). The scope of a search incident to arrest encompasses "the full search of the arrestee's person at the jail or place of detention." *Parkinson,* 389 A.2d at 12; *see also State v. Babcock,* 361 A.2d 911, 915 (Me.1976) (no limits on scope of search of arrestee himself). Having lawfully arrested Foy, *see Robinson,* 414 U.S. at 236, 94 S.Ct. at 477 (lawful arrest establishes authority to conduct warrantless search), there was nothing constitutionally impermissible about the search of his person at the station for evidence of hydrocarbons. *Id.* at 225–26, 94 S.Ct. at 472–73 (justification for search incident to arrest rests on need to disarm suspect and to preserve evidence on person).

■ Similarly, the seizure of Foy's sneakers did not constitute a Fourth Amendment violation. The taking of property that is evidence of a crime from a defendant's possession "is a normal incident of a custodial arrest." *United States v. Edwards,* 415 U.S. 800, 805, 94 S.Ct. 1234, 1238, 39 L.Ed.2d 771 (1974), *overruled on other grounds by United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Contrary to Foy's contention, there was no need for the police to obtain a warrant to seize his sneakers as evidence.

> When it became apparent that the articles of clothing were evidence of the crime for which [the defendant] was being held, the police were entitled to take, examine, and preserve them for use as evidence, just as they are normally permitted to seize evidence of crime when it is lawfully encountered.... Indeed, it is difficult to perceive what is unreasonable about the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody....

*Id.* at 806, 94 S.Ct. at 1238 (fact that clothing was taken from defendant without warrant while in custody at city jail approximately ten hours after arrest did not require clothing and paint chips found on it to be excluded at trial). There is no "doubt that clothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis [nor is there doubt] that the test results are admissible at trial."[4] *Id.* at 803–04, 94 S.Ct. at 1237. Given the lawfulness of the arrest, we find no error with the court's denial of Foy's motion to suppress the sneaker evidence.

## II. Discovery Violations

Foy contends that the post-fire statements he made to Farley–Young and Colson were unduly prejudicial and should have been excluded because the State did not provide them to him pursuant to the automatic discovery provisions of M.R.Crim.P. 16(a).

---

3. Although we assume for purposes of this appeal that a dog-sniff of a person for purposes of hydrocarbon detection constitutes a search within the meaning of the Fourth Amendment, we do not now decide the issue.

4. We also note that this statement answers Foy's contention that a warrant was required in order to chemically test the sneakers.

 M.R.Crim.P. 16[5] requires the State to disclose certain information in the State's possession or control to a defendant, and includes a duty "of reasonable diligence, of making reasonable inquiry to uncover material relevant to the case against the defendant." *State v. Jalbert*, 537 A.2d 593, 595 (Me.1988); 1 Cluchey & Seitzinger, *Maine Criminal Practice* § 16.1 at IV–87 to –88 (1994). The primary concern of Rule 16, in the absence of bad faith on the part of the State, is to "protect the defendant from any unfair prejudice." *State v. Mylon*, 462 A.2d 1184, 1186 (Me.1983).

 Foy does not dispute that the State notified Foy when it first learned about the statements. Rather, he argues that the State should have discovered this information as a result of diligent inquiry by it and its failure to do so was a discovery violation. We do not agree. The State planned to call Farley–Young for her testimony about Foy's allegations of police corruption in Dexter in order to provide evidence that Foy was motivated by publicity and seeking hero status. The State had no reason to assume that Foy would have contacted Farley–Young after he was arrested. Likewise, the State planned to show Colson's interview with Foy only to rebut Foy's trial testimony. In these circumstances, this was not material that was, or should have been, in the possession or control of the State's attorney. *Jalbert*, 537 A.2d at 595; *see State v. Heald*, 393 A.2d 537, 541 (Me.1978) (records from Maine Department of Mental Health and Corrections were not in possession and control of State's attorney or office).

Moreover, Foy cannot claim he was unfairly surprised since he made the statements to both reporters and was aware that Farley–Young was a State witness. Nor did he move for a continuance in order to further prepare when he was informed at the start of the trial of the potential use during rebuttal of the taped statements made to Colson. The court acted well within its discretion in deciding to admit the evidence. *Jalbert*, 537 A.2d at 595.

Although Foy also raises a number of other issues, we find no obvious error with the jury selection process, the court's instructions to the jury, or the admission of testimony regarding the dog's performance, and do not address them.

The entry is:

Judgment affirmed.

All concurring.

5. The rule provides in pertinent part:

(a) **Automatic Discovery.**

(1) *Duty of the Attorney for the State.* The attorney for the state shall furnish to the defendant within a reasonable time:

(A) A statement describing any testimony or other evidence intended to be used against the defendant which:

(i) Was obtained as a result of a search and seizure or the hearing or recording of a wire or oral communication;

(ii) Resulted from any confession, admission, or statement made by the defendant; or

(iii) Relates to a lineup, showup, picture, or voice identification of the defendant;

(B) Any written or recorded statements and the substance of any oral statements made by the defendant.

. . . .

(2) *Continuing Duty to Disclose.* The attorney for the state shall have a continuing duty to disclose the matters specified in this subdivision.

. . . .

(d) **Sanctions for Noncompliance.** If the attorney for the state fails to comply with this rule, the court on motion of the defendant or on its own motion may take appropriate action, which may include, but is not limited to, one or more of the following: requiring the attorney for the state to comply, granting the defendant additional time or a continuance, relieving the defendant from making a disclosure required by Rule 16A, prohibiting the attorney for the state from introducing specified evidence and dismissing charges with prejudice.