2012 ME 69

**STATE of Maine**

v.

**Timothy MOONEY.**

Supreme Judicial Court of Maine.

Argued: April 13, 2012.
Decided: May 29, 2012.

Thomas F. Shehan, Jr., Esq. (orally), Belfast, for appellant Timothy Mooney.

Christopher Fernald, Asst. Dist. Atty. (orally), Prosecutorial District Six, Rockland, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Timothy Mooney appeals from a judgment entered in the Superior Court (Knox County, *Wheeler, J.*) following a jury trial at which the jury found Mooney guilty of trafficking in prison contraband (Class C), 17–A M.R.S. § 757(1)(B) (2011).[1] Mooney argues that the court erred by (1) allowing a corrections officer to testify about details of the incident giving rise to Mooney's criminal charge because the State failed to comply with M.R.Crim. P. 16(a) regarding a portion of the officer's testimony that was not contained in her written report; and (2) allowing an investigator to testify as to additional charges that would have been brought against Mooney had another inmate cooperated with the investigation. We agree with the latter contention, and because we conclude that the error was not harmless, we vacate Mooney's conviction.

## I. BACKGROUND

[¶ 2] "We view the evidence admitted at trial in the light most favorable

---

1. The statute provides:

 1. A person is guilty of trafficking in prison contraband if:

 . . . .

 B. Being a person in official custody, he intentionally makes, obtains or possesses contraband.

 17–A M.R.S. § 757(1)(B) (2011).

to the State and determine that the jury could have found the following facts beyond a reasonable doubt." *State v. Guyette*, 2012 ME 9, ¶ 2, 36 A.3d 916. On November 11, 2010, an altercation took place at the Maine State Prison. Corrections Officer Angela Smith was stationed on the first level of the prison's "C-pod" when she heard the sounds of a commotion coming from the second level. She looked up and observed Mooney coming out of a cell while another inmate, Michael Brine, attempted to push Mooney. Smith yelled, "fight," and ran up the stairs to the second level with another corrections officer. When they reached the second level, Mooney and Brine were in Brine's cell. Smith and the other officer separated Mooney and Brine; the other officer then attended to another incident that was taking place in the cell next to Brine's.

[¶ 3] Moments later, Mooney again attempted to enter Brine's cell. He pulled Brine's cell door open and made a forward motion. Smith quickly grabbed Mooney by the back of his shirt, observed that, "something went flying," and pulled him out of the cell. Another corrections officer then arrived and removed Mooney from the area.

[¶ 4] Smith turned her attention to Brine, who was bleeding from wounds to his left shoulder and left hand. She applied pressure to his wounds with a towel until medical personnel arrived. It was later determined that Brine's injuries were the result of lacerations to his shoulder and hand and were severe enough that they had to be sutured.

[¶ 5] After medical personnel arrived to attend to Brine's injuries, Smith com-pleted an incident report that described the altercation between Mooney and Brine. She then returned to Brine's cell and found a shank in front of his cell and a second shank [2] in front of the cell next to his.[3] Smith's incident report did not mention the shanks and she did not fill out a supplemental report after discovering them. When later asked why the shanks were not mentioned in her report, Smith replied: "At the time when I was dealing with pulling Inmate Mooney out I did not see what was in his hand and I didn't know until later what had been thrown ... was a shank." Although at trial Mooney sought to exclude Smith's testimony concerning her observations that were not detailed in her report and objected when she testified to those observations, the trial court admitted the testimony in evidence, reasoning that the lack of those details in Smith's report was a credibility issue for the jury.

[¶ 6] John Scheid, a criminal investigator for the Maine Department of Corrections assigned to the Maine State Prison, investigated the incident between Mooney and Brine. Brine refused to cooperate with Scheid's investigation. When Scheid testified at trial, the following exchange took place:

PROSECUTOR: Now, if Michael Brine was cooperative, would you have brought additional charges in this case?

SCHEID: I would have.

MOONEY: Objection, Your Honor, he is asking him to speculate to facts—based on facts not in evidence.

COURT: I will allow it. Overruled.

PROSECUTOR: The question was, if Michael Brine was cooperative, would

---

2. In prison parlance, a "shank" refers to a device, often crudely constructed, used as a weapon for stabbing or cutting.

3. The record reflects that the shank recovered directly in front of Brine's cell was a slender piece of metal approximately six inches in length. One end was fashioned into a cutting edge with a sharp point and the other end had been wrapped in some type of material, making it easier to grip the metal.

you have brought additional charges beyond trafficking in prison contraband?

SCHEID: Absolutely.

MOONEY: Objection, it is further not relevant.

COURT: The answer will stand. It is overruled.

PROSECUTOR: What additional charges would you have brought if he was cooperative?

SCHEID: I would have sent that to the District Attorney's Office for review for either elevated aggravated assault or aggravated assault.

COURT: But that charge is not—has not been filed and it is not before the jury. The only issue for you is whether or not the State can prove beyond a reasonable doubt that Mr. Mooney intentionally possessed prison contraband.

[¶ 7] The jury found Mooney guilty of trafficking in prison contraband. The court imposed a sentence of three years to be served consecutively to a thirty-five year sentence that he was already serving. This appeal followed.

## II. DISCUSSION

### A. Smith's Testimony

■ [¶ 8] Mooney argues that the court abused its discretion by permitting Smith to testify concerning observations she made regarding the incident between Mooney and Brine that were not detailed in her written report because the State failed to comply with the automatic discovery provisions of M.R.Crim. P. 16(a). We disagree.

■ [¶ 9] "We review a trial court's decision to exclude or admit evidence for an abuse of discretion or clear error." *State v. Waterman*, 2010 ME 45, ¶ 35, 995 A.2d 243 (quotation marks omitted). Pursuant to M.R.Crim. P. 16,[4] the State is required to disclose certain information in the State's possession or control to a defendant, and to make a reasonable inquiry to uncover material relevant to the case against the defendant. *State v. Foy*, 662 A.2d 238, 242 (Me.1995). The primary purpose of the Rule is to "protect the defendant from any unfair prejudice." *Id.* (quotation marks omitted). A failure to comply with the Rule's provisions "may result in the trial court's excluding the specified evidence." *State v. Sanborn*, 644 A.2d 475, 479 (Me.1994).

[¶ 10] Smith's observations concerning the shanks, which were not detailed in her report, do not fall within the plain language of the Rule; therefore, the State was under no obligation to provide that evidence to Mooney for purposes of automatic discovery. *See* M.R.Crim. P. 16(a); *see also State v. Griffin*, 642 A.2d 1332, 1333–34 (Me.1994) (concluding that a law

---

4. The Rule provides, in relevant part:

(1) *Duty of the Attorney for the State.* The attorney for the state shall furnish to the defendant within a reasonable time:

(A) A statement describing any testimony or other evidence intended to be used against the defendant which:

(i) Was obtained as a result of a search and seizure or the hearing or recording of a wire or oral communication;

(ii) Resulted from any confession, admission, or statement made by the defendant; or

(iii) Relates to a lineup, showup, picture, or voice identification of the defendant.

(B) Any written or recorded statements and the substance of any oral statements made by the defendant.

(C) A statement describing any matter or information known to the attorney for the state which may not be known to the defendant and which tends to create a reasonable doubt of the defendant's guilt as to the crime charged.

. . . .

(2) *Continuing Duty to Disclose.* The attorney for the state shall have a continuing duty to disclose the matters specified in this subdivision.

enforcement officer's testimony regarding his reactions to the defendant's threats in a terrorizing case was not subject to automatic discovery pursuant to M.R.Crim. P. 16(a) even though it established an element of the crime charged and the defendant was in custody when he made the threats to the law enforcement officer). Additionally, Mooney did not file a motion for a continuance when he became aware that Smith was going to testify about her observations of the incident beyond those contained in her written report. As a result, the court did not abuse its discretion by admitting Smith's testimony. *See Foy*, 662 A.2d at 242.

B. Scheid's Testimony

[¶ 11] Mooney next contends that Scheid's testimony, concerning additional charges that could have been brought against Mooney had Brine been cooperative in his investigation, was not relevant and therefore inadmissible. "We review a trial court's determination of relevance for clear error." *State v. Dilley*, 2008 ME 5, ¶ 25, 938 A.2d 804.

[¶ 12] Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R. Evid. 401. Thus, "[a]ll facts which tend to prove or disprove the matter at issue or which constitute a link in the chain of circumstantial evidence with respect to the act charged are relevant." *State v. Allen*, 2006 ME 20, ¶ 18, 892 A.2d 447. "Evidence which is not relevant is not admissible." M.R. Evid. 402.

[¶ 13] Scheid testified that if Brine had cooperated with his investigation, he would have recommended that Mooney be charged with aggravated assault or elevated aggravated assault. This testimony did not tend to prove or disprove the charge that Mooney trafficked in prison contraband. *See State v. Martin*, 2007 ME 23, ¶ 10, 916 A.2d 961 (explaining that whether the defendant's act of speeding would have constituted a criminal or civil offense if the defendant had in fact been charged with speeding was not relevant in determining whether the defendant had operated his vehicle in a manner that constituted reckless conduct, aggravated assault, and driving to endanger). Accordingly, the trial court erred by admitting Scheid's irrelevant testimony in evidence.[5]

C. Harmless Error

[¶ 14] The State maintains that even if the court erred by admitting Scheid's testimony, the error was harmless because other evidence in the record establishes that Mooney trafficked in prison contraband. The State's argument, however, does not properly apply our established standard for determining whether an error is harmless.

[¶ 15] "A preserved error that is not of constitutional dimension is harmless if it is highly probable that the error did not affect the judgment." *Guyette*, 2012 ME 9, ¶ 19, 36 A.3d 916 (quotation marks omitted). The amount or weight of the properly admitted evidence in the record, independent of any erroneously admitted evidence, is merely one factor that is taken into consideration in de-

---

5. We also note that Scheid lacked personal knowledge as to whether assault charges could have been brought against Mooney because he received no information from Brine, and was not present when the altercation occurred, nor did he witness the altercation. *See* M.R. Evid. 602; *State v. Long*, 656 A.2d 1228, 1230 (Me.1995) (concluding that a witness who had been informed by a third person that an alternative suspect had burned down his trailer lacked personal knowledge pursuant to M.R. Evid. 602 as to who in fact started the fire because he did not perceive the events through his physical senses).

termining whether it is highly probable that the trial court's error did not affect the jury's decision. *See, e.g., State v. Kirk,* 2005 ME 60, ¶ 17, 873 A.2d 350 (concluding that the trial court's error in admitting character evidence of the defendant was harmless because the character evidence involved an act unrelated to the crime charged and other evidence linking the defendant to the victim's homicide was "very strong"); *State v. White,* 2002 ME 122, ¶ 16, 804 A.2d 1146 (finding that the trial court's error was harmless when the record contained "enough admissible testimony to bar a conclusion that the contested out-of-court statement meaningfully influenced the verdict").

 [¶ 16] Simply because the record contains sufficient evidence to establish the defendant's guilt notwithstanding improperly admitted evidence does not compel a conclusion that it is highly probable that the improperly admitted evidence did not affect the judgment. *See, e.g., State v. Mangos,* 2008 ME 150, ¶ 15, 957 A.2d 89 (explaining that the trial court's error in admitting DNA evidence that linked the defendant to clothing worn during a robbery was not harmless even though two witnesses identified the defendant as the robber at trial because DNA evidence is "very powerful evidence" due to its definitive nature).

[¶ 17] The State's case against Mooney was circumstantial. No direct evidence established that Mooney in fact possessed prison contraband, specifically one of the shanks recovered near Brine's cell. Smith testified that when she restrained Mooney from entering Brine's cell "something went flying" from Mooney's hand, but she did not know what he had thrown and only later surmised upon returning to the scene of the incident that it was a shank. Al-

though a reasonable inference could be drawn that Mooney inflicted the lacerations on Brine's shoulder and hand with a shank during their altercation, Scheid's testimony—that if Brine had cooperated aggravated or elevated aggravated assault charges could then have been brought against Mooney—invited the jury to conclude that Mooney had in fact attacked Brine with a shank. By improperly creating a forgone conclusion that the assault occurred, the State effectively foreclosed any possible avenue for Mooney to offer alternate theories of the event.

[¶ 18] Moreover, even though the State denies intending this result, Scheid's testimony that additional charges were not brought against Mooney because Brine refused to cooperate with Scheid's investigation potentially suggested to the jury that it should convict Mooney on the trafficking in prison contraband charge even though the circumstantial evidence presented at trial may have been equivocal, because the jury knew that it was practically certain Mooney would not face any other criminal charges stemming from the altercation with Brine.[6]

[¶ 19] Accordingly, we cannot conclude on this record that it is highly probable that the court's error in admitting Scheid's testimony did not affect the jury's verdict.

The entry is:

Judgment vacated.

**6.** Although the trial court immediately and appropriately instructed the jury to consider only the charge pending before them at trial, we are unpersuaded that the substantial unfair prejudice created by the inadmissible testimony was avoided by the instruction.