MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 150
Docket:        Cum-14-45
Submitted
 On Briefs:    September 23, 2014
Decided:       December 23, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and HJELM,
               JJ.

STATE OF MAINE

v.

FIDEL GARCIA

HJELM, J.

[¶1]  Fidel Garcia appeals from a judgment of conviction for operating after revocation (Class C), 29-A M.R.S. § 2557-A(2)(C) (2013), entered in the trial court (Cumberland County, *Warren, J.*) after a jury trial.[1]  Garcia argues that the court erred in refusing to instruct the jury about certain statutory requirements

---

[1]  As is noted in the text *infra*, Garcia was charged with operating after revocation (Class C), 29-A M.R.S. § 2557-A(2)(D) (2013), which requires proof that within the ten years preceding the alleged offense date, the defendant had three or more convictions for operating after revocation or OUI.  The indictment alleged that within the statutory look-back period, Garcia had been convicted of operating after revocation once and OUI three times.  Ultimately, the State did not press allegations of prior convictions for operating after revocation and for one of the three OUI convictions, and Garcia did not contest allegations of the two remaining OUI convictions.  Combined with the jury's guilty verdict on the remaining elements of the offense, this means that Garcia was found guilty of operating after revocation under section 2557-A(2)(C) (2013), which is the basic offense with two prior convictions for operating after revocation or OUI.  Further, had Garcia been found guilty pursuant to section 2557-A(2)(D), which triggers a two-year minimum mandatory period of incarceration, the ten-month sentence imposed here would have been illegal.  Because the Judgment and Commitment issued in this case incorrectly recites that Garcia was convicted pursuant to section 2557-A(2)(D), we remand for correction of the statutory reference in the Judgment and Commitment to 29-A M.R.S. § 2557-A(2)(C).  *See State v. Robbins*, 2010 ME 62, ¶ 4 n.1, 999 A.2d 936.

affecting written notice of revocation. *See* 29-A M.R.S. §§ 2481, 2482 (2013). He also contends that he was unfairly prejudiced by the State's use of documents that he alleges were not properly identified as part of an exhibit but nonetheless were presented to the jury. We conclude that any errors were harmless and affirm the judgment as amended. *See supra* note 1.

## I. BACKGROUND

[¶2] Viewed in the light most favorable to the State, the evidence establishes the following facts. *See State v. Cruthirds*, 2014 ME 86, ¶ 2, 96 A.3d 80. On May 18, 2013, Westbrook police officer Brett Bissonnette saw a truck drive through a public parking lot and then stop. Bissonnette watched as Garcia exited the truck from the driver's side door. He did not see anyone else in the vehicle. Bissonnette approached Garcia, and Garcia told Bissonnette that he did not know if his driver's license was currently active. Bissonnette then checked the status of Garcia's license and found that it was under revocation because Garcia was a habitual offender.

[¶3] Garcia was charged with operating after habitual offender revocation (Class C), 29-A M.R.S. § 2557-A(2)(D) (2013). The case proceeded to jury trial in November 2013. At trial, after the State rested its case, Garcia presented the testimony of Robert O'Connell, Jr., who was the former Director of Driver License Services at the Bureau of Motor Vehicles (BMV). He explained that BMV is the

part of the Maine Department of the Secretary of State that is charged with providing notice of revocation as required by 29-A M.R.S. § 2482. O'Connell testified that in December 2008, BMV sent a written notice to Garcia notifying him that, as a result of a conviction earlier that year for operating after habitual offender revocation, the period of an existing license revocation was being extended. O'Connell explained that the notice was sent to Garcia at an address that BMV maintained in its records but that the notice was returned as undeliverable. O'Connell also testified that BMV did not receive a report from the law enforcement officer involved in the matter that led to the 2008 conviction.

[¶4] During the course of O'Connell's testimony, the court conferred with counsel at sidebar. As they were discussing an evidentiary issue, the jury officer advised the court and counsel that the jurors reported to him that they were confused about O'Connell's testimony. After counsel conferred briefly off the record, the prosecutor stated:

> [STATE]: We have a different suggested approach: Drop the questioning about the address because we can just rely on actual knowledge, in which case *we will be moving to admit the conviction, the J & C [Judgment and Commitment],* showing that he signed the document, acknowledging the conviction in 2008—although they show convictions which we were not relying on for purposes—but we would rely on it—
>
> THE COURT: Rely [on it] for notice purpose[s].

4

> [DEFENSE COUNSEL]: Yeah, and give a limiting instruction on that. That is fine.

(Emphasis added.)

[¶5] After both parties conducted further examination of O'Connell, the State offered State's exhibit 4, which was not further described on the record but includes the Judgment and Commitment issued against Garcia on October 31, 2008, for operating after habitual offender revocation (Class D), 29-A M.R.S. § 2557-A (2008),[2] and operating under the influence (Class D), 29-A M.R.S. § 2411(1-A) (2007).[3] The Judgment and Commitment recites that as part of the sentence, Garcia's right to operate a motor vehicle was suspended. Garcia's signature appears on the Judgment and Commitment, immediately after an acknowledgement, which is part of the form, that he understood the sentence.

[¶6] Even though, at the sidebar conference, the prosecutor had expressed an intention to offer the Judgment and Commitment into evidence, State's exhibit 4 also included a number of other documents associated with the 2008 criminal case against Garcia. Among other things, the exhibit included a Notice of Suspension issued by the court, which shows Garcia's signature accompanied by a recital that

---

[2]   Section 2557-A has since been amended, though not in any way that affects the present case. *See* P.L. 2009, ch. 54, § 5 (effective April 22, 2009) (codified at 29-A M.R.S. § 2557-A (2013)).

[3]   Section 2411 has since been amended numerous times, though not in any way that affects the present case. *See, e.g.,* P.L. 2013, ch. 604, § 2 (effective Aug. 1, 2014) (to be codified at 29-A M.R.S. § 2411 (2014)).

he "understand[s] the suspension(s) imposed and acknowledge[s] receipt of the Notice of Suspension."[4]  The suspension evidently was part of the sentence for the OUI conviction.  *See* 29-A M.R.S. § 2411(5)(B)(3) (2007).  Garcia did not object to State's exhibit 4, and the court admitted it into evidence.

[¶7]  After the sidebar colloquy, the State did not offer any additional evidence that written notice of the status of Garcia's right to drive was properly sent to him, and in its summation to the jury, it did not argue that the Secretary of State mailed to Garcia a written notice of the revocation pursuant to 29-A M.R.S. § 2482(1).  *See* 29-A M.R.S. § 2557-A(1)(A) (2013) (providing that notice of revocation, which is an element of the crime of operating after habitual offender revocation, may be proven if the defendant "[i]s a person to whom written notice was sent in accordance with section 2482 . . . .").  Rather, the State argued that Garcia had actual knowledge that his license was revoked, *see* 29-A M.R.S. § 2557-A(1)(A)(3) (providing that notice of revocation may be proven if the defendant "[h]as actual knowledge of the revocation. . ."), because in 2008 he pleaded guilty to a charge of operating after revocation and did not take steps after

---

[4]    In addition to the Judgment and Commitment and the Notice of Suspension, State's exhibit 4 consisted of the indictment charging Garcia with OUI (Class C) and aggravated habitual motor vehicle offender (Class C); an information charging him with the Class D habitual offender count; the associated dismissal of the Class C habitual offender charge; a motion and resulting court order reducing the Class C OUI charge to a Class D offense; and a court order establishing conditions of probation.

6

that to restore his driving privileges.  While making this argument to the jury, the State referred to a document that Garcia signed on the date of the 2008 conviction, where he acknowledged the "revocation."[5]  Following defense counsel's suggestion in his closing argument that the prosecutor in fact had referred to the Notice of Suspension associated with the 2008 conviction for OUI, the prosecutor clarified in rebuttal that the document she identified previously was the Judgment and Commitment.  Garcia did not object to this portion of the State's closing argument.

[¶8]  Although the State was no longer relying on a theory of written notice of revocation, the court instructed the jury that the State could prove notice in two alternative ways: either that Garcia had actual knowledge that his license was revoked, or that the Secretary of State had sent written notice in accordance with the requirements as described in section 2482(1).  On the issue of written notice, the court instructed the jury that the Secretary of State was required to send notice to the address provided in the law enforcement officer's report if that address differed from the one it maintained in its records.  *See* 29-A M.R.S. § 2482(1)(B).  Neither party objected to this instruction.

---

[5]  The Judgment and Commitment actually refers to a "suspension" rather than a "revocation."

[¶9]    Garcia requested that the court also instruct the jury that a law enforcement officer is required to submit to the Secretary of State a report of an OUI investigation.  *See* 29-A M.R.S. § 2481(1).  O'Connell had testified that the form for the report calls for the officer to provide an address that the Secretary of State would then use to send written notice of a revocation pursuant to section 2482(1)(B).  In support of the requested instruction, Garcia argued that if the officer fails to submit a report, then "the notice fails."  The court rejected the proposed instruction, reasoning that an officer's failure to submit a report pursuant to section 2481 was relevant only to an administrative proceeding affecting a person's driver's license and that such a failure would not preclude a subsequent criminal prosecution based on the person's license status.

[¶10]  The jury found Garcia guilty, and the court imposed a prison sentence of ten months and a $1,000 fine.  Garcia filed a motion for a new trial, *see* M.R. Crim. P. 33, arguing that the court should have instructed the jury that a law enforcement officer has a duty pursuant to section 2481(1) to file a report with the Secretary of State.  The court denied Garcia's motion for the reason it expressed at trial and on the additional ground that the State argued to the jury only that Garcia should be found guilty based on his actual knowledge of the revocation and not based on written notice.  The court also rejected Garcia's alternative ground for the Rule 33 motion that he was unfairly prejudiced when, he alleged, in

8

its closing argument the State referred to the Notice of Suspension that was included, apparently without his knowledge, as part of State's exhibit 4. Garcia filed this timely appeal.

## II. DISCUSSION

[¶11] Garcia argues that the court erred in declining to instruct the jury on the provisions of section 2481; that the State engaged in prosecutorial misconduct by including as part of State's exhibit 4 court documents that went beyond his understanding of the State's earlier description of it; and that the evidence is insufficient to support the verdict.

A.    Jury Instructions

[¶12]   Garcia's challenge to the court's jury instructions focuses on the statutory requirements applicable to written notices of revocation as set out in 29-A M.R.S. §§ 2557-A(1)(A), 2482 (2013).

[¶13] As the notice requirement pertains to this case, for Garcia to be found guilty of the offense of operating after revocation, the State was required to prove beyond a reasonable doubt that Garcia either had "actual knowledge of the revocation" at the time he was allegedly driving, or that Garcia is "a person to

whom written notice was sent in accordance with section 2482 . . . ." 29-A M.R.S. §§ 2557-A(1)(A)(3), (4) (2013).[6]  Section 2482(1), in turn, provides:

> **1. Notification by Secretary of State.**  Upon determining that a person is subject to license suspension or revocation, the Secretary of State shall immediately notify the person, in writing, of the license suspension or revocation.  The notice:
>
> > **A.**  Must be sent to the last name and address provided under section 1407 or, if the person has not applied for a license, on record with the Secretary of State;
> >
> > **B.**  Must be sent to the address provided in the report of the law enforcement officer if that address differs from the address of record; or
> >
> > **C.**  May be served in hand.

Because Garcia had not applied for a license, for written notice of a revocation to be effective pursuant to section 2482(1), the Secretary of State was required to send it to Garcia's address maintained in its records or, if it was different, to the address in the law enforcement officer's report.

[¶14]  In its charge, the court instructed the jury that the State was required to prove that as of the alleged offense date, either Garcia had actual knowledge that his license or right to drive was revoked, or the Secretary of State had sent written notice of the revocation to Garcia at the address that the Secretary of State's office

---

[6]  The statutory notice required by 29-A M.R.S. § 2557-A (2013) is also satisfied with proof that the defendant actually received written notice of the revocation from the Secretary of State or that a law enforcement officer orally informed the defendant of the revocation.  29-A M.R.S. §§ 2557-A(1)(A)(1)-(2).  There is no evidence that Garcia was given notice in either of these two ways.

maintained in its records or that was set out in a report submitted by the officer who reported the incident that led to the revocation. Garcia argues here that the court erred in failing to instruct the jury additionally that the officer who investigated the 2008 OUI incident resulting in the conviction for operating after revocation was required to file a report with the Secretary of State. *See* 29-A M.R.S. § 2481(1).[7] Because the evidence revealed that the Secretary of State did not receive a report from a law enforcement officer in 2008, Garcia goes on to argue that the omission of this instruction was prejudicial, because the

---

[7] Title 29-A M.R.S. § 2481(1) (2013) states:

**Administrative procedures for suspension**

**1. Report of officer.** A law enforcement officer who has probable cause to believe a person has violated the terms of a conditional driver's license, commercial driver's license or provisional license or committed an OUI offense shall send to the Secretary of State a report of all relevant information, including, but not limited to, the following:

> **A.** Information adequately identifying the person charged;
>
> **B.** The ground that the officer had for probable cause to believe that the person violated the terms of a conditional driver's license, commercial driver's license or provisional license or committed an OUI offense;
>
> **C.** A certificate of the results of alcohol level tests conducted on a self-contained breath--alcohol testing apparatus; and
>
> **D.** If a person fails to submit to a test, the law enforcement officer's report may be limited to a written statement under oath stating that the officer had probable cause to believe that the person violated the terms of a conditional driver's license, commercial driver's license or provisional license, or committed an OUI offense and failed to submit to a test.

The report must be under oath and on a form approved by the Secretary of State.

proposed instruction would have allowed the jury to conclude that the 2008 written notice did not meet the statutory requirements and was therefore ineffective.

[¶15]   Jury instructions are reviewed "as a whole . . . to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law." *State v. Martin*, 2007 ME 23, ¶ 5, 916 A.2d 961 (quotation marks omitted). We review a trial court's denial of a requested jury instruction for prejudicial error. *State v. Soule*, 2001 ME 42, ¶ 8, 767 A.2d 316.  On appellate review, a party can demonstrate entitlement to a requested instruction only where the instruction was requested and not given by the court and it "(1) stated the law correctly; (2) was generated by the evidence; (3) was not misleading or confusing; and (4) was not sufficiently covered in the instructions the court gave."  *State v. Hanaman*, 2012 ME 40, ¶ 16, 38 A.3d 1278.

[¶16]  We need not reach the question of whether the court erred in declining to give the requested instruction, because any such error was harmless.  An error in instructions is deemed harmless only if a review of the entire trial record demonstrates that it is "highly probable that [the error] did not affect the [jury's] verdict." *Soule*, 2001 ME 42, ¶ 8, 767 A.2d 316 (quotation marks omitted); *see also State v. Mooney*, 2012 ME 69, ¶¶ 15-19, 43 A.3d 972.  The sufficiency of competent evidence to establish a defendant's guilt is a factor—but not a dispositive one—in the harmless error analysis, *Mooney*, 2012 ME 69, ¶¶ 15-16,

43 A.3d 972, because for error to be harmless, there must be a high level of confidence that it did not taint or otherwise affect the outcome of the trial. This is a different test than simply whether the evidence was sufficient to sustain a particular verdict.

[¶17]  The court instructed the jury that one of the two alternative ways the State could establish the notice requirement was through evidence that Garcia had actual knowledge that his license had been revoked. Garcia makes no claim of error regarding the court's instructions on actual knowledge.

[¶18]  The evidence supporting the State's allegation of actual knowledge was "very strong." *See State v. Kirk*, 2005 ME 60, ¶ 17, 873 A.2d 350 (erroneous admission of character evidence was harmless where the remaining evidence was "very strong"); *see also State v. White*, 2002 ME 122, ¶ 16, 804 A.2d 1146. The State presented documentary evidence that in 2008, Garcia pleaded guilty to a charge of operating after revocation. This conviction by itself established that at the time of the conviction, Garcia had actual knowledge that his right to drive had been revoked, because that is one of the elements of the crime. The evidence also included a certificate from the Secretary of State, admitted without objection, stating that Garcia's right to operate had been revoked in December 2003 and that as of May 18, 2013 (the alleged offense date here), it remained under revocation because Garcia had not satisfied the statutory requirements for restoration. The

combined effect of this evidence demonstrates to a very high level of proof that in May 2013 Garcia had actual knowledge that his license was still revoked.[8] Just as Garcia must have known that his license was revoked at the time he pleaded guilty to that charge in 2008, he also must have known that he had not taken steps to effect restoration of his right to drive subsequent to the conviction.

[¶19] Therefore, in light of the strength of the State's proof supporting the independent alternative allegation that Garcia actually knew at the time of the alleged offense that his license was under revocation, we conclude that even if the court's instructions about written notice were incorrect, it is highly probable that the error did not affect the jury's verdict and was therefore harmless.[9]

B.    Prosecutorial Misconduct

[¶20] Garcia next argues that the State engaged in prejudicial misconduct by offering State's exhibit 4 into evidence when the exhibit included court records that went beyond the prosecutor's previously stated intention to offer only the Judgment and Commitment, and by allegedly using one of those extraneous

---

[8]   In his summation to the jury, defense counsel focused on the question of whether the Secretary of State complied with the written notice requirements imposed by statute, and he said very little about the allegation of actual knowledge harbored by Garcia, which was the State's sole argument.

[9]   Combined with our review of the evidence relating to the other elements of the offense, this conclusion disposes of Garcia's argument that the evidence, which we must view in the light most favorable to the State, *see State v. Haag*, 2012 ME 94, ¶ 2, 48 A.3d 207, was insufficient to support the jury's verdict.

documents, the 2008 Notice of Suspension, during closing arguments.[10]  Because

Garcia did not object either to the exhibit itself or to its use during the State's

closing argument, we review Garcia's claim for obvious error.[11]  *See* M.R. Crim. P.

52(b); *State v. Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032.  Unpreserved error is

obvious if it is plain; if there is a reasonable probability that it affected the

defendant's substantial rights; and, to warrant appellate relief, if it "seriously

affects the fairness and integrity or public reputation of judicial proceedings."

*Dolloff*, 2012 ME 130, ¶¶ 35, 58 A.3d 1032 (quotation marks omitted).

[¶21]  We observe initially that it is not at all clear from the record that the

State misled Garcia about the contents of State's exhibit 4.  The State offered the

exhibit and referred to it merely by the exhibit number, without describing what it

contained.  Garcia had every opportunity to review the exhibit before he indicated

---

[10]  The transcript itself does not clearly indicate whether in her summation the prosecutor referred to the Notice of Suspension or to the Judgment and Commitment, both of which order a suspension (but not a revocation) as part of the sentence.  Although defense counsel apparently believed that the prosecutor referred to the Notice of Suspension, the prosecutor made clear in her rebuttal that she had referred to the Judgment and Commitment.  In an order denying Garcia's post-trial motion, the court did not make a finding either way.  Beyond this, although the record is not explicit on the point, we assume that State's exhibit 4 was given to the jury for its consideration during deliberations, as is the ordinary course with documentary exhibits.  Thus, regardless of which document the prosecutor used during the State's closing argument, the jury was exposed to the Notice of Suspension at some point.

[11]  Garcia later raised these claims of prosecutorial misconduct in a motion for a new trial.  Nonetheless, it remained Garcia's obligation to bring these challenges "immediately" to the court's attention during the trial itself so that the court would be placed in a position to implement any remedial measures that might be warranted.  *See State v. Dolloff*, 2012 ME 130, ¶ 31, 58 A.3d 1032.  Therefore, the obvious error standard of review still governs the nature of our review even though he raised the claims in a post-trial motion.

to the court that he had no objection to its admission into evidence. Although the State could have been more clear by articulating that the exhibit went beyond the Judgment and Commitment discussed previously at sidebar, nothing in this process demonstrates an affirmative impropriety.

[¶23] Even, however, if there is merit to Garcia's argument that the State induced him to believe that the exhibit consisted only of the Judgment and Commitment, Garcia is not entitled to relief on appeal.

[¶24] Garcia's argument focuses on the inclusion of the 2008 Notice of Suspension as part of State's exhibit 4. The Notice of Suspension, however, did not contain any information that created unfair prejudice to Garcia. The State predicated its argument on Garcia's actual knowledge that his right to operate was revoked. That knowledge derived from his 2008 conviction for operating after revocation and his failure to take any subsequent action to obtain restoration of his right to drive in Maine. Also, Garcia's entire driving record was separately admitted into evidence without objection. That document showed a history of driving convictions and suspensions, including the 2008 suspension and the resulting administrative revocation. One of Garcia's own exhibits, which was also admitted into evidence, was a BMV record that recited the 2008 conviction for operating after revocation and stated that the underlying revocation was

consequently extended.[12] That document also provided notice that Garcia's driving privileges would not be restored automatically but rather that he would need to take affirmative steps to effect restoration. The Notice of Suspension therefore did not materially add to the evidence that was otherwise properly before the jury. As the trial court concluded in denying Garcia's motion for new trial, "it was highly unlikely that any of the technical arguments the defense raised as to notice were going to be particularly persuasive to a jury."

[¶25] We therefore conclude that even if the State improperly offered and used court documents other than the Judgment and Commitment as part of State's exhibit 4, any such prosecutorial misconduct did not affect Garcia's substantial rights and did not rise to the level of obvious and reversible error.

The entry is:

> Remanded to the trial court for correction of the statutory reference in the Judgment and Commitment to 29-A M.R.S. § 2557-A(2)(C). Judgment affirmed in all other respects.

---

[12] Garcia offered the document because it showed an additional address used by the Secretary of State when it mailed notices to him. Other documents admitted into evidence showed that the agency used two other addresses in notices sent to Garcia in 2003.

**On the briefs:**

> Whitney J. Hayre, Esq., Law Offices of Anthony J. Sineni III, LLC, Portland, for appellant Fidel Garcia

> Stephanie Anderson, District Attorney, and Julia Sheridan, Asst. Dist. Atty., Prosecutorial District No. Two, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2013-3249
FOR CLERK REFERENCE ONLY