MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 6
Docket:      Ken-18-6
Argued:      October 23, 2018
Decided:     January 15, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

TODD J. PERKINS

HUMPHREY, J.

[¶1]  In this appeal, we consider whether jury instructions given in an OUI case were confusing where the State presented two alternative theories of guilt—principal liability and accomplice liability.  We affirm the judgment, and, because these alternative theories are not commonly pursued together in an OUI prosecution, we also take this opportunity to clarify and distinguish them.

[¶2]  Todd J. Perkins appeals from a judgment of conviction for operating under the influence with a refusal to submit to a chemical test (Class D), 29-A M.R.S. § 2411(1-A)(C)(1) (2017), entered by the court (Kennebec County, *Benson, J.*) after a jury trial.  Perkins contends that the court abused its discretion when it denied his motion for a new trial because the court's instructions on a driver's duty to submit to a chemical test and on accomplice

2

liability confused the jury and did not provide a roadmap for the jury to be able to return a not guilty verdict.[1]

## I. BACKGROUND

[¶3]  "Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt."  *State* v. *Hurd,* 2010 ME 118, ¶ 4, 8 A.3d 651.  Late in the afternoon of August 26, 2016, Richard Tuttle picked up Perkins at his home in Windsor, Maine, and drove the pair in Perkins's truck to several bars in Hallowell.[2]  The men visited three bars that evening and had a "few beers" at each stop.  Sometime late in the night, a bartender refused Perkins and Tuttle further service due to their high level of intoxication.  The manager of the bar asked the men to leave and advised Perkins not to drive.  The manager saw the men exit the bar, walk to the back of Perkins's truck, and consume the contents of two cans they retrieved from the back of the vehicle.  Concerned that Perkins was

---

[1] Perkins also argues that, consistent with the theory of accomplice liability, the court should have instructed the jury *sua sponte* regarding a voluntary intoxication defense.  Because Perkins did not request a voluntary intoxication instruction or object to its omission at trial, he did not preserve that argument, and the court's alleged failure to provide the instruction *sua sponte* was not obvious error. *See State v. Gauthier*, 2007 ME 156, ¶ 26, 939 A.2d 77 (stating that in an obvious error review, "we will not grant relief unless the error in the instructions is so highly prejudicial and so taints the proceedings as to virtually deprive the defendant of a fair trial.") (quotation marks omitted).  We do not consider this argument further.

[2] Perkins had a conditional license that prohibited him from driving after consuming any amount of alcohol.

already "almost blackout drunk" and would attempt to drive, the manager called 9-1-1. He gave the police a description of the truck and the license plate number.

[¶4] In the early morning of August 27, Officer Sheridan encountered the truck traveling north towards Augusta. He followed the vehicle for approximately a quarter of a mile before it entered Memorial Circle, a rotary. At the rotary, the truck was straddling the dividing line with its right blinker on for the Memorial Drive exit when it suddenly jerked left and travelled all the way around the circle again. The truck finally exited, veered right, and jerked to a stop with squealing tires. Officer Sheridan came to a stop behind the truck. When he reached the driver's side window—five to ten seconds after stopping—Perkins was seated behind the wheel. Officer Sheridan observed that Perkins's speech was extremely slow and slurred, his movements were lethargic, and he gave conflicting statements to the officer.

[¶5] Approximately five minutes after Officer Sheridan stopped the truck, Officer Adams arrived at the scene. Officer Adams approached the vehicle, observed Perkins in the driver's seat and another person in the passenger's seat,[3] and detected the odor of intoxicating liquor coming from the

---

[3] Neither officer asked the passenger for his name or ever interviewed him about the incident.

4

vehicle. Officer Adams asked Perkins how much he had to drink and Perkins responded that he wasn't driving because he was "unsafe to drive." At Officer Adams's request, Perkins exited the truck; his movements were slow and he used both hands on the door to maintain his balance. Officer Adams then attempted to administer the horizontal gaze nystagmus test, but despite multiple attempts, Perkins was unable to complete the test.

[¶6] Perkins was placed under arrest on suspicion of OUI and transported to the Augusta Police Department. Once there, Perkins repeatedly declined to take a breath test and would not sign the refusal paperwork.

[¶7] On August 27, 2016, Perkins was charged with one count of criminal OUI with a refusal to submit to a chemical test (Class D). 29-A M.R.S. § 2411(1-A)(C)(1). He waived arraignment and entered a not guilty plea. Perkins's first trial in June 2017 resulted in a hung jury and mistrial.

[¶8] The court held a second jury trial on November 30 and December 1, 2017. The prosecution presented two alternative theories of the case: (1) Perkins operated a motor vehicle while under the influence ("principal liability"), or (2) Perkins, knowing that the other person in the truck, Tuttle, was intoxicated, intentionally allowed Tuttle to drive Perkins's motor vehicle ("accomplice liability").

[¶9]  At the close of the evidence and final arguments, the court reviewed the proposed jury instructions with counsel in chambers.  Perkins objected only to the accomplice liability instruction, asserting that it would confuse the jury, and that the court and the parties would not be able to "sort out" which theory of liability—principal or accomplice—the jury based its verdict on when considering the refusal instruction.

[¶10]   Relevant to this appeal, the court gave the following jury instructions regarding Maine's OUI law, accomplice liability, and a driver's duty to submit to a chemical test:

[*OUI—Principal Liability*]

A person under our law is guilty of operating under the influence if he operates a motor vehicle while under the influence of intoxicants.

In order for you to find the defendant guilty, the State must prove beyond a reasonable doubt; one, that the defendant operated a motor vehicle; and two, at the time of the operation the defendant was under the influence of intoxicants.

. . . .
[*OUI—Accomplice Liability*]

. . . A person may also be found guilty of operating under the influence as a princi[pal] or as an accomplice, thus you may return a verdict of guilty if you find that the State has proven beyond a reasonable doubt; one, that the defendant, Todd Perkins, was operating a motor vehicle, and at the time of operation he was under the influence of intoxicants or that; two, the defendant, Todd

Perkins, knew that Richard Tuttle was under the influence of intoxicants, and with the intent Richard Tuttle operate Todd Perkins'[s] motor vehicle, Todd Perkins allowed Richard Tuttle to operate the motor vehicle, and Richard Tuttle operated the motor vehicle while under the influence of intoxicants.

So, there were two separate theories under which you can consider whether the defendant, Mr. Perkins, committed the offense of operating under the influence.

[*Refusal Instruction*]

The Law in Maine provides that a person has the duty to submit to chemical testing to determine the person's blood alcohol level if there is probable cause that the person operated a motor vehicle while under the influence of intoxicants. While a person has a duty to submit to chemical testing, the person is not required to sign the implied consent form. The chemical test to which the person has a duty to submit is a breath test unless the investigating police officer determines that a breath test is not reasonable. If the officer determines a breath test is not reasonable, another chemical test, such as a blood test, shall be administered instead.

In this case, the State, and the complaint allege that the defendant failed to submit to a chemical test. The State must prove beyond a reasonable doubt that the defendant failed to submit to a test. If you find as a fact that the defendant failed to submit to a test, that failure is evidence that may be considered by you in determining whether the defendant was under the influence of intoxicants, and you may give that evidence of failure the weight you believe it deserves.

[¶11] The jury found Perkins guilty. Neither party requested a special verdict and the jury did not disclose whether it found Perkins guilty as the principal or as an accomplice.

[¶12] On December 15, 2017, Perkins moved for a new trial. M.R. Crim. P. 33. He argued that the court erred by failing to sufficiently clarify "the interplay of the accomplice liability instruction [and] the refusal language." The court denied his motion and sentenced Perkins to ninety days in the Kennebec County Jail, suspended his driver's license for 150 days, and assessed a $650 fine. Perkins filed a timely notice of appeal. *See* 15 M.R.S. § 2115 (2017); M. R. App. P. 2B(b).

## II. DISCUSSION

[¶13] On appeal, Perkins argues that the court's denial of his motion for a new trial was an abuse of discretion because the court failed to clarify in its instructions that, in the context of an OUI charge under the accomplice liability theory, a defendant's refusal to submit to a chemical test has no bearing on a determination of the defendant's guilt. He also argues that he was deprived of a fair trial because the court's instructions failed to provide the jury with a roadmap to a not guilty verdict.

[¶14] We review the court's denial of a motion for a new trial for abuse of discretion. *See State v McNaughton*, 2017 ME 173, ¶ 45, 168 A.3d 807. In doing so, we consider the jury instructions as a whole and review "the total effect created by all the instructions and the potential for juror

misunderstanding." *State v. Daniels,* 663 A.2d 33, 36 (Me. 1995) (quotation marks omitted); *see also State v. Garcia*, 2014 ME 150, ¶ 15, 106 A.3d 1137 (quotation marks omitted). A conviction must be vacated if "the erroneous instruction[s] resulted in prejudice." *State v. Anderson*, 2016 ME 183, ¶ 18, 152 A.3d 623; *see also State v. Gauthier*, 2007 ME 156, ¶ 14, 939 A.2d 77.

[¶15] In Maine, a defendant may be found guilty of OUI as a principal—the operator—or as an accomplice. *See State v. Stratton*, 591 A.2d 246, 247 (Me. 1991); *Hurd,* 2010 ME 118, ¶ 29, 8 A.3d 651.[4] These distinct theories differ most notably in that a defendant need not be intoxicated or be the operator of a vehicle to be found guilty of OUI under the accomplice liability theory. *See Stratton*, 591 A.2d at 247-48. A defendant need only intentionally allow another to operate his vehicle knowing that the other person is under the influence of intoxicants. Because the point cannot be overstated, we restate that the nondriver defendant's state of intoxication is wholly irrelevant to his guilt under an accomplice liability theory; he can be sober and still be found guilty.

---

[4] Although the jury must return a unanimous verdict, the members of the jury need not agree as to which theory of guilt applies to the defendant. *State v. Hurd,* 2010 ME 118, ¶ 29, 8 A.3d 651. It is well established that a court is "generally barred from inquiring into the jury's deliberations." *Id.* ¶ 32.

[¶16]  In this case, Perkins was charged with OUI and the State argued both theories of liability—principal and accomplice—at trial.  The court instructed the jury with regard to the elements of each theory.  The court also instructed the jury on Maine law regarding the duty of the operator of a motor vehicle to submit to chemical testing to determine his blood alcohol level and informed the jury that it was free to use the operator's refusal as evidence of his intoxication if the State proved, beyond a reasonable doubt, that he failed to submit to a chemical test.  Perkins argues that the refusal instruction misled the jury because the court did not specifically limit its applicability to the principal liability theory—an error, he argues, that resulted in an unfair trial.  We disagree.

[¶17]  First, the court's refusal instruction was clear: "a person has the duty to submit to chemical testing . . . if there is probable cause that the person *operated a motor vehicle while under the influence*."  (Emphasis added.)  The instruction unmistakably (1) applies to the defendant only as the operator of the vehicle, not, alternatively, as a non-driver accomplice, (2) provides that the State must prove that it was "the defendant [who] failed to submit to a test," and (3) permits the jury, if persuaded by that proof, to consider evidence of the refusal in deciding "whether the defendant was *under the influence*."

[¶18]  The uncontroverted record evidence is that Perkins was the only person (1) charged with operating the truck while under the influence, (2) specifically identified as "the defendant" in the instructions, (3) offered a chemical test, and (4) who refused to take a test; therefore, he was the only person to whom the refusal instruction could apply.

[¶19]  Second, because the refusal instruction unambiguously applied only to the operator of the vehicle, it clearly did not apply to a nonoperator accomplice.  The accomplice liability instruction reflects this important distinction.  It identifies two discrete actors—the operator and the accomplice—and two discrete inquiries: did the principal operate a motor vehicle while under the influence of intoxicants, and did the person charged as an accomplice intentionally allow the principal to operate the vehicle knowing that the principal was under the influence of intoxicants.  It is clear from these siloed inquiries that the accomplice's state of impairment is not relevant, or something that the State is required to prove under an accomplice liability theory, and that the instruction does not provide a pathway to Perkins's *guilt* of OUI as an accomplice on the basis of his refusal.  *See State v. Ashley*, 666 A.2d 103, 107 (Me. 1995) (stating that it is well established that jury instructions need not be perfect, and the trial court has "wide discretion in formulating its

instructions to the jury so long as it accurately and coherently reflects the applicable law").

[¶20] Because the jury instructions are clear that the refusal instruction is inapplicable to the charge of accomplice liability in an OUI case, and because we can identify no prejudice to Perkins that resulted in an unfair trial, the court did not abuse its discretion by denying the defendant's motion for a new trial.

The entry is:

> Judgment affirmed.

---

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Camden, for appellant Todd J. Perkins

Maeghan Maloney, District Attorney, Christy Stilphen, Stud. Atty., and Tyler J. LeClair, Asst. Dist. Atty. (orally), Prosecutorial District IV, Kennebec, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2016-2176
FOR CLERK REFERENCE ONLY