STATE of Maine

v.

Woodbury ELDRIDGE.

Supreme Judicial Court of Maine.

March 7, 1980.

---

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland, Barbara J. Mantegani, Law Student (orally), for plaintiff.

Wilson, Steinfeld, Murrell, Barton & Lane, Steven A. Juskewitch (orally), Paul Aranson, Portland, (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

A jury in the Superior Court (Cumberland County) found defendant Woodbury Eldridge guilty of rape, in violation of 17–A M.R.S.A. § 252(1)(B)(1), for having compelled another person, not his spouse, by force to submit against her will to sexual intercourse with him.

Defendant's appeal from the judgment of conviction entered on the verdict raises one basic issue worthy of extended discussion. Defendant contends that the presiding Justice committed reversible error in refusing to instruct the jury to disregard testimony of the prosecutrix, given on cross-examination, that she was bruised by defendant's use of force against her. This claim of error arises from the following circumstances. The prosecuting attorney had given

defense counsel access to a police report which contained a statement of the prosecutrix. Defense counsel interpreted the statement to say that the prosecutrix had not sustained bruises. Relying on this interpretation of the statement, defense counsel asked the prosecutrix on cross-examination a leading question to elicit an expected answer that the prosecutrix had not been bruised. Instead, the prosecutrix answered that defendant had bruised her.

It had not been divulged to defense counsel that shortly before the commencement of the trial the prosecutrix had given the prosecuting attorney information which, had it been disclosed to defense counsel, would have indicated to him that his interpretation of the meaning of the statement of the prosecutrix may not have been accurate. Defendant maintains that the failure of the prosecuting attorney to disclose this information to him, so that he could have been alerted to avoid the subject of bruises on cross-examination, (1) was a violation of the discovery obligations imposed on the prosecuting attorney by Rule 16(b) and (c) M.R.Crim.P. or (2) in any event, was prosecutorial misconduct which, in combination with the refusal of the presiding Justice to strike the answer of the prosecutrix that defendant had bruised her, subjected defendant to an unfair trial.

We deny the appeal.

Late in the afternoon of November 24, 1978 defendant, by pre-arrangement, met the prosecutrix at her apartment in Portland to drive her to the post office and to various stores on her personal errands. The prosecutrix had known defendant, who was a childhood companion of her husband, for approximately six years, and defendant often assisted her with transportation. On this occasion, after the prosecutrix had finished her errands, defendant drove her to Buxton to visit with friends one last time before she would leave in early December to rejoin her husband who was in the military service, stationed in Germany. The two of them left Buxton at approximately 7:00 p. m. On the return trip to Portland they stopped once to make some purchases. When they approached the environs of Portland, instead of continuing directly into Portland, defendant took a roundabout route through Falmouth where he drove to an isolated dirt road. He stopped the car, turned off the engine and put his arm around the prosecutrix.

The evidence is conflicting as to what subsequently occurred.

 The testimony of the prosecutrix was as follows. She sought to dissuade defendant from making any further advances, but defendant persisted, saying: "I'm sorry, . . . , I have to do it." She then grabbed her pocketbook, opened the passenger door, tried to get out of the car and screamed for help. Defendant grabbed her, pulled her back into the car, pushed her down on the front seat and held her down while he removed her pants. The prosecutrix made a second attempt to escape but was thwarted by defendant's superior strength. With one hand she continued efforts to push him away from her, and with her pocketbook held in the other hand, she tried to shield her face and neck. Defendant nevertheless succeeded in penetrating her, and it lasted for several minutes.[1] Thereafter, two more penetrations occurred, each for several minutes. So far as the prosecutrix could tell, defendant achieved climax only after the third penetration. The prosecutrix made no mention of further physical force used by defendant to compel her submission to the second and third penetrations, but she said that throughout the experience she continued to be afraid that defendant would cause her serious bodily injury.

Defendant's testimony was that before he drove to the dirt road, the prosecutrix did not appear anxious to return home. She

---

1. This was believable testimony and, therefore, it was the prerogative of the jury to believe, or disbelieve, it. The verdict manifests that the jury believed it. With the facts thus taken to be as the prosecutrix testified, we find utterly unpersuasive defendant's other argument on appeal that the evidence was legally insufficient to establish that defendant by force compelled the prosecutrix to submit, against her will, to sexual intercourse with him.

sat very close to him in the front seat, placing her hand on his leg. He used no force whatsoever during the incident. Although the prosecutrix may have "refused somewhat" to lie down, she willingly engaged in sexual intercourse with him.

After the incident defendant drove the prosecutrix home. A week later, the prosecutrix communicated with the Rape Crisis Center, to make an appointment for a venereal disease examination. She had made no complaint to the police because, she said, she was apprehensive that if she involved the police, she would be required to remain in the United States until after a trial, and this would cause her problems about the planned reunion with her husband in Germany. However, after the prosecutrix had consulted with a physician at the Rape Crisis Center, she did make a complaint to the police.

Prior to trial, defense counsel requested discovery pursuant to Rule 16(b) M.R. Crim.P., which authorized that he have "access" to "matters . . . within the attorney for the State's possession or control", as follows:

"[a]ny books, papers, documents, photographs (including motion pictures and video tapes), tangible objects, buildings or places, or copies or portions thereof, which are material to the preparation of the defense or which the attorney for the State intends to use as evidence in chief at the trial or which were obtained from or belong to the defendant",

as well as "[a]ny reports or statements of experts" relating to the case.

After this request, the attorney for the State provided to defense counsel a copy of a police report containing a statement the prosecutrix had made to the police. Included in this statement were the words: "I have bruises where he grabbed my arm." A line was drawn through all of these words, accompanied by the initials of the prosecutrix.

At trial, the prosecuting attorney's direct examination of the prosecutrix made no reference to the subject of bruises. On cross-examination, however, defense coun-

sel, relying on his interpretation of the meaning of the statement of the prosecutrix as it appeared in the police report, asked her the leading question: "And its true that there were no bruises on your body whatsoever; is that correct?" The prosecutrix answered: "I had marks on my arms from where he held my arm down when he grabbed me and pulled me in the car."

Defense counsel immediately asked for a bench conference, at which he told the presiding Justice:

"I have received discovery in this particular case and the discovery—the fact that she had marks on her arms had been ruled out and initialed."

The prosecuting attorney then stated:

"I spoke to her about that this morning. She said the reason that she crossed it out was because at the time she gave the police the report, the bruises had gone away. She said to me she had bruises when she got home but by the time she made the report, she didn't have any and that's why it is crossed out."

The prosecuting attorney volunteered no explanation, and none was asked for by the presiding Justice or defense counsel, regarding why this information had not been disclosed to defense counsel. Defense counsel asked the court to order stricken as evidence the answer of the prosecutrix that the force used by defendant produced marks on her body. The presiding Justice refused, stating:

"Well, you can examine her about that if you want to. You ask[ed] her the question, you got the answer. I don't know what else I can do."

Thereafter, defense counsel did make further inquiry on cross-examination about the incident, as follows:

"Q. . . . [Y]ou made a statement to the police, did you not?

"A. Yes, I did.

"Q. In that statement to the police you specifically ruled out the fact that there were any marks on you whatsoever; is that correct?

"A. Yes, when I made that statement I didn't have any more bruises. That is why I took them out.

"Q. Would it be fair to say the bruises didn't last very long if you had any?

"A. I went and made that statement a week and two days later."

Defendant contends that because the prosecuting attorney provided him a police report containing a statement of the prosecutrix, after a specific request had been made pursuant to Rule 16(b), the "continuing duty" provision of Rule 16(b)(4) required the prosecuting attorney to disclose to the defendant the subsequent statement of the prosecutrix notwithstanding that it was an *oral* statement. We take this contention to have been saved for appellate cognizance in ordinary course by the presiding Justice's denial of defense counsel's request that the answer of the prosecutrix be stricken as evidence, the request having been made after defense counsel had stated to the Justice that relying on the discovery the State had afforded him, he asked the question about bruises justifiedly expecting an answer contrary to the one given.

Rule 16 structures discovery procedures according to the nature and type of evidence sought. Statements of the defendant, whether they be written, recorded, or oral, and any type of evidence tending to create a reasonable doubt of defendant's guilt, must "automatically" be disclosed, as provided in 16(a). Pursuant to 16(b), upon a request by defendant, specified types of physical evidence, documents and the statements or reports of experts must be disclosed. In addition, under 16(c) limited information about witnesses and specified types of statements by witnesses, if not otherwise disclosed, may be required by an

order of court to be disclosed. As to each of these three categories, Rule 16 establishes discrete, but substantially similar, "continuing duties" of disclosure regarding matters coming into the possession of the prosecuting attorney subsequent to the time of any initial discovery.

■ The "continuing duty" provision relating specifically to 16(b) reads as follows: "(4) *Continuing Duty to Disclose.* If matter *which would have been furnished* to the defendant *under this subdivision* comes within the attorney for the State's possession or control after the defendant has had access to similar matter, the attorney for the State shall promptly so inform the defendant." (emphasis added) The language emphasized, in light of the general structure of Rule 16, shows that the prosecutor has a "continuing" duty of disclosure *only* as to those matters for which a duty of disclosure was imposed in *the first instance.* Similarly, the "continuing" duty of the prosecuting attorney established by Rule 16(c)(1), as applicable to witnesses, is confined to the "matters specified in this subdivision"; that is, the "continuing" duty extends only to those matters regarding which Rule 16(c)(1) imposes an initial duty to disclose.[2]

■ Hence, whether in the case at bar the prosecuting attorney was subject to a duty, as "continuing" from an original duty of disclosure, to make known to defense counsel the oral explanation given by the prosecutrix to the prosecuting attorney depends upon whether the prosecuting attorney had an original duty, under 16(b) and (c), to disclose *oral* statements of witnesses.

We conclude that 16(b) and (c) imposed no such original duty of disclosure as to

**2.** We thus make explicitly plain that this "continuing duty" extends to *all* of the matters concerning "witnesses" dealt with by the entirety of Rule 16(c)(1).

Because of a typesetting error in the printed reproduction of the text of the Rule it is wrongly made to appear that the "continuing duty" is confined to 16(c)(1)(C): "Any record of prior criminal convictions of witnesses." The correct printed reproduction of the Rule, as promulgated by the *Supreme Judicial Court, would*

show that the paragraph beginning with the words: "Access shall be according to . . ." would start a second complete paragraph under the principal text constituting the entirety of Rule 16(c)(1) and bearing the title "Witnesses"; that is, commencing with the second line of the text of this second paragraph, the left hand margin should be the same as that formed commencing with the second line of the first paragraph of the principal text.

matters oral in nature, including the oral statements of witnesses.[3]

In this regard, the textual language of 16(b) and (c) is in striking contrast to that of 16(a)(1) relating to "automatic" discovery. In 16(a)(1)(B) express reference is made to the "substance of any *oral* statements made by the *defendant*" (emphasis added), as well as to defendant's "written or recorded statements." In 16(a)(1)(C) the reference is to any "statement", whether made by defendant or some other person and without qualification as to whether it is written, recorded, or oral,

> "describing any matter or information known to the attorney for the State which may not be known to the defendant and which tends to create a reasonable doubt of the defendant's guilt as to the offense charged."

The basic sources of present Rule 16 M.R. Crim.P., which became effective January 3, 1978, similarly limit discovery to "written or recorded" statements of witnesses. Prior Rule 16 was derived from a combination of sources, including the Federal Rules of Criminal Procedure and a former version of the *Uniform Rules of Criminal Procedure.* *See* Rule 16(a) M.R.Crim.P. as originally effective December 1, 1965, Reporter's Notes, in *Glassman*, Maine Practice, 130–131. *See also* ABA Standards Relating to Discovery and Procedure Before Trials § 2.1(a)(1) 1969. Under Rule 16(a)(2) Fed. R.Crim.P. "statements made by government witnesses or prospective government witnesses" are not discoverable "except as provided in 18 U.S.C. § 3500" (the Jencks statute, so-called). Under Section 3500(b) of that statute when a government witness has testified under direct examination, a defendant is authorized to request "statements" made by the witness. By Section 3500(d) the "statements" that may thus be requested are confined to those written and signed (or otherwise adopted or approved) or those recorded by "stenographic, mechanical, electrical, or other" means to be

"substantially verbatim." A purpose of such limitation would appear to be to avoid subjecting the prosecution to the onerous burden of a continuing responsibility to disclose oral statements of witnesses that happen to come forth in the course of witness interviews and preparation sessions.

We return to the provisions in Rule 16(a)(1)(C) and (2) M.R.Crim.P., previously mentioned in passing, to discuss more in detail the mandatory original, as well as the continuing, duty they impose upon the prosecuting attorney for "automatic" disclosure of a

> "statement describing any matter or information known to the attorney for the State which may not be known to the defendant and which tends to create a reasonable doubt of the defendant's guilt as to the offense charged."

Essentially embodied in these provisions is the constitutional due process of law requirement articulated initially in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and subsequently refined in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *See* M.R. Crim.P. 16(a)(1)(C), Advisory Committee Notes, in 381–384 A.2d *Maine Reporter* (1977–1978) LVI–LVII.

The prosecutor's nondisclosure in the instant case manifestly does not approach the egregious degree of blameworthiness inhering in the deliberate suppression of evidence, after a specific request, involved in *Brady v. Maryland, supra,* or the knowing prosecutorial tolerance of false testimony dealt with in *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). Neither does the nature of the information withheld in the case at bar bring it within the characterization in *United States v. Agurs, supra,* that it be evidence of "obviously exculpatory character", *see Wagster v. Overberg,* 560 F.2d 735 (6th Cir. 1977); *Garrison v. Maggio,* 540 F.2d 1271 (5th Cir. 1976); that is, evidence of so high a level of materiality that with it a reasonable doubt

---

**3.** A possible exception might be the "reports or statements of experts" as mentioned in 16(b)(2)(B), where the Rule makes no express reference to their being "written" or "recorded." We presently intimate no opinion on this point.

would arise as to defendant's guilt which would not arise without it.

■ Plainly, the prosecutrix's oral explanation, here, as to her prior statement about bruises lacked the high degree of materiality required under *Aqurs* to give rise to a constitutional duty of disclosure by the prosecuting attorney. The clarification was *inculpatory* of defendant, not exculpatory, and therefore could not create a reasonable doubt as to defendant's guilt which otherwise would not arise.

■ As an alternative argument, defendant maintains that, independently of the generalized discovery provisions of Rule 16 M.R.Crim.P., in the particular circumstances of this case the withholding of the information had so strong a tendency to mislead defense counsel that the conduct of the prosecutor must be held contrary to the basic notions of fair play that should control the behavior of governmental officials.

This contention, however, was never made at trial. When defense counsel asked the presiding Justice to strike the answer of the prosecutrix as evidence, he asserted only a violation of the discovery provisions of Rule 16 M.R.Crim.P. He made no contention that the fairness of the trial had been impaired, and he made no motion for a mistrial. Similarly, in motions he made both at the close of the State's case and when all of the evidence had been presented defense counsel never gave the slightest intimation that he was contending that the fairness of the trial had been affected by the prosecutor's conduct and the claimed prejudicial effects of the surprise testimony of the prosecutrix as to bruises. The issue, therefore, was not saved for appellate cognizance in ordinary course, and we may address it only in the "manifest error-serious injustice" posture of whether there was error in the conduct of the prosecuting attorney and of the presiding Justice which combined to deprive defendant of a fair trial. *State v. Christianson*, Me., 404 A.2d 999, 1005 (1979).

We have examined the totality of the record, with particular attention to the circumstances of defense counsel's question on cross-examination and the response of the prosecutrix relative to bruises, the immediately ensuing bench conference, and defense counsel's subsequent tactic of bringing the entire matter before the jury on cross-examination even though no mention of it had been made by the prosecution on direct examination. We conclude that even if we assume, without deciding, that what defendant claims as error was legal error, defendant was not subjected to an unfair trial.

Several factors minimize not only the adverse impact on defendant's case of the answer as to bruises given by the prosecutrix but also any potential for unfairness arising because defense counsel may have been misled into asking a question he might not have asked had he been privy to the information given to the prosecuting attorney shortly before the commencement of trial.

Here, the jury's determination of what happened between the prosecutrix and the defendant involved, at bottom, whether the jury would believe the testimony of the prosecutrix or the testimony of the defendant, there being no independent corroborating circumstances. Absent independent corroboration of whether the prosecutrix had sustained bruises, her testimony that she was bruised would add little to the jury's basic evaluation of her credibility, more particularly since in her overall testimony she had given a direct description of what defendant had done to her: that he had twice grabbed her, pulled her into the automobile, and thrust her down upon the seat, and that despite her continuing efforts to push his body off hers, he persisted in keeping himself on top of her. If the jury was inclined to believe this part of the testimony of the prosecutrix, it would hardly matter to the jury whether or not such conduct by the defendant caused the prosecutrix to be bruised. On the other hand, if the jury was unwilling to accept the testimony of the prosecutrix and found the defendant's story believable, the additional particular claim of the prosecutrix that defendant's conduct had caused her bruises,

being nothing more than *her own cumulative* testimonial statement, would hardly affect the jury's evaluation of the credibility of prosecutrix and defendant.

 Beyond this, it is far from plain that defense counsel was justified in placing so utter a reliance as he said he did on the statement of the prosecutrix. The manner in which the statement appeared in the police report could fairly be said to have given reasonable indication on its face that something was amiss or that something unusual had happened, warranting further inquiry. It is arguable, then, that in deciding to rely totally on the statement as it appeared in the police report without making further inquiry, defense counsel made a tactical decision to embark upon a course which involved risks; on the basis of what was before him *objectively* defense counsel may have been justified in reaching a conclusion as to what the statement *probably* was saying, but he could not be sure of its meaning without further investigation.[4]

We may note, too, that defense counsel chose to ask the question about bruises on cross-examination to elicit an anticipated answer negativing bruises which, for substantive purposes, need not have been elicited. The prosecuting attorney had brought out nothing about the matter of bruises in the direct examination of the prosecutrix. Hence, defense counsel's undertaking on cross-examination to seek to have the prosecutrix negative the existence of bruises was a trial tactic to seek to achieve what counsel may have thought gave the point more dramatic impact than to leave it entirely on the basis of the direct examination and then

to emphasize in closing argument that there was no evidence of bruises.

The entry is:

Appeal denied.

Judgment of conviction affirmed.

POMEROY, ARCHIBALD and GLASSMAN, JJ., did not sit.

---

4. A comment is in order, too, regarding the behavior of the prosecuting attorney in this instance. We cannot tell from the record whether the prosecutor's withholding of the information acquired from the prosecutrix was a deliberate determination reached after careful reflection had led to the conclusion that there was no legal obligation to disclose the information to defense counsel—more particularly so, if the prosecuting attorney would avoid bringing up the subject of bruises on direct examination. If such a calculated decision had been made by the prosecuting attorney, it was one fraught with risk. The question was a close one. It would have been the safer course, and one more within the spirit of the discovery principles embodied in Rule 16, for the State's attorney either to disclose the information to defense counsel or to inform the court of what had transpired and have the court make a ruling. *See United States v. McFarland,* 371 F.2d 701, at 705, and including n.4 (2nd Cir. 1966). If a ruling by the court is sought, defense counsel must, of course, be present when the prosecuting attorney consults with the court. The court should then arrange with counsel for both sides a procedure to enable the court to consider and rule upon the particular matter at issue without disclosure of it to defense counsel prior to a ruling requiring such disclosure.