MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 22
Docket:       And-17-236
Argued:       December 14, 2017
Decided:      February 6, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ABDI A. HASSAN

GORMAN, J.

[¶1]  The State of Maine appeals from a judgment of the trial court (Androscoggin County, *Oram, D.C.J.*) denying its motion to reconsider the court's order dismissing, with prejudice, thirteen of the State's fifteen counts against Abdi A. Hassan as a sanction for the State's alleged discovery violation. The State argues that the court erred as a matter of law by concluding that it violated its discovery obligations.  We agree that the State did not commit a discovery violation, vacate the judgment, and remand the case for trial.

## I. BACKGROUND

[¶2]  A grand jury indicted Hassan on December 4, 2013.[1]  The indictment consisted of two counts of theft by deception (Class B), 17-A M.R.S. § 354 (2017); seven counts of aggravated forgery (Class B), 17-A M.R.S. § 702 (2017); one count of negotiating a worthless instrument (Class C), 17-A M.R.S. § 708 (2017); and five counts of unsworn falsification (Class D), 17-A M.R.S. § 453 (2017).  Thirteen of the fifteen counts involved assistance programs administered, in part, by the Department of Health and Human Services.

[¶3]  Because Hassan and his co-defendant needed interpreters to assist their attorneys and to participate in the proceedings, and because the discovery in the case involved hundreds of pages of documents, Hassan's case presented timing and staffing challenges for the parties and for the court.  Apparently due to these challenges, the case lingered on the docket for nearly three years.  In November of 2016, the court issued an order that scheduled the trial to begin in May of 2017.  Pursuant to this schedule, a jury was selected over the course

---

[1]  A grand jury also indicted Hassan's co-defendant on related charges, and the indictments were initially joined for trial, but the co-defendant entered a negotiated plea in May of 2017 and is not a party to this appeal.

of three days during the first week of May. Although originally scheduled to begin on May 8, the start of the trial was postponed until May 15, 2017.[2]

[¶4] On May 11, 2017, the State conducted a second pretrial interview with one of its potential witnesses, a former Department employee who purportedly processed some of Hassan's claims for benefits back in 2005. During this second interview, the former employee—for the first time—expressed doubt about some signatures and handwriting on three "standard" Department forms that the State planned to introduce against Hassan. Those forms were identified as Exhibits 57, 60, and 61. Specifically, the former employee expressed uncertainty about whether one form contained her signature and which other employees at the Department may have completed or processed the forms.

[¶5] The State had provided Hassan with copies of the exhibits in question about three years earlier. "Within hours" after learning the information, the State disclosed to Hassan what it had learned from the former Department employee. Upon receipt of this information, Hassan asserted that the State had violated Rule 16 of the Maine Rules of Unified Criminal Procedure, and he moved to dismiss the indictment—or in the alternative to continue the

---

[2] Hassan's co-defendant entered a negotiated plea after the jury had been selected.

4

case—as a sanction for what he claimed was a violation of the State's discovery obligations. The State objected to the motion to dismiss but took no position on the request for a continuance. The court held a nontestimonial hearing on the motion to dismiss or continue on May 12, 2017.

[¶6] In an order dated May 14, 2017, the court stated that "both the nature of the information, and the timing of the disclosure, cause the court grave concern." The court referred to the information obtained from the former Department employee as "potentially exculpatory material," and, in one portion of the order, noted that it "potentially calls into question the integrity or reliability of the documentation and witnesses as to all the counts . . . related to the Department of Health and Human Services." In another portion of its order, the court stated, "Perhaps neither the documents nor the witness is central to the State's case. However, the potentially exculpatory information is significant to the defense."

[¶7] The court also noted that "[m]uch earlier in the life of this case, it would have been reasonable for the prosecution to look at a document that appears to be a standard [Department] form, appears to be signed by a [Department] employee, appears to be signed by [Hassan], and conclude that the document is what it appears to be." The court went on to acknowledge that

"[n]othing on the face of Exhibit 61, standing alone, is initially suspicious" and that Hassan "is not surprised by information about his signature."

[¶8]  Despite these findings, the court determined that the State's failure to uncover the information from the former employee earlier in the life of the case was a discovery violation.  Referencing Rule 16 of the Maine Rules of Unified Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963), the court held that the State had failed to meet its obligation of "reasonable diligence," and that "the State should have known the information" that it obtained from the former employee, "at the *very latest*, . . . when the State submitted its proposed jury voir dire."

[¶9]  Although the court stressed that the late disclosure was not the "result of any bad faith or improper effort to conceal information on the part of the [State]," it determined that dismissal was the appropriate sanction because the "case ha[d] been pending for far too long," "[a]pproximately 180 residents of Androscoggin County devoted three days of their lives to the jury selection process," and "a delay of a day or two [would] not give [Hassan] an adequate opportunity to prepare his case."  *See* M.R.U. Crim. P. 16(e).  Ultimately, the court sanctioned the State by dismissing, with prejudice, the thirteen counts against Hassan that involved the Department.

6

[¶10]   The court denied the State's motion to reconsider.[3]   With the approval of the Attorney General, the State filed this timely appeal.  15 M.R.S. § 2115–A(1), (5) (2017); M.R. App. P. 2(a)(4), (b)(2)(A), 21(b) (Tower 2016).[4]

## II. DISCUSSION

[¶11]   The State argues that the court erred as a matter of law by concluding that its failure to uncover the information from the former Department employee before the second pretrial interview violated its automatic discovery obligations pursuant to Rule 16 and *Brady v. Maryland*.  We review the trial court's interpretation and application of the Maine Rules of Unified Criminal Procedure de novo "and look to the plain language of the rules to determine their meaning."  *See Town of Poland v. T & M Mortg. Sols. Inc.*, 2010 ME 2, ¶ 6, 987 A.2d 524; *State v. Johnson*, 2006 ME 35, ¶ 9, 894 A.2d 489. We also review the alleged constitutional violation de novo, *State v. Williamson*, 2017 ME 108, ¶ 21, 163 A.3d 127, and "review for an abuse of discretion a trial

---

[3]  After the court denied its motion to reconsider, the State dismissed, without prejudice, the two counts against Hassan that did not involve the Department of Health and Human Services.  The court then released the jury and the case did not proceed to trial.

[4]  The Maine Rules of Appellate Procedure were restyled effective for appeals commenced on or after September 1, 2017.  *See* M.R. App. P. 1 (restyled Rules).  Because the State filed this appeal before September 1, 2017, the restyled Maine Rules of Appellate Procedure do not apply.

court's sanction for a discovery violation," *State v. Poulin*, 2016 ME 110, ¶ 28, 144 A.3d 574.

A.    Maine Rule of Unified Criminal Procedure 16(a)

[¶12]  The pertinent language of Rule 16 provides:

**(a) Automatic Discovery.**

(1) *Scope of Automatic Discovery*.  The attorney for the State shall provide as automatic discovery all matters set forth in this subdivision that are within the possession or control of the attorney for the State.  The obligation of the attorney for the State extends to matters within the possession or control of any member of the attorney for the State's staff *and of any* official or *employee of this State* or any political subdivision thereof *who regularly reports or who, with reference to a particular case, has reported to the office of the attorney for the State*.

(2)  *Duty of the Attorney for the State*.  The attorney for the State shall provide the following to the defendant:

. . . .

(D)  A statement describing any matter or information known to the attorney for the State that may not be known to the defendant and that tends to create a reasonable doubt of the defendant's guilt as to the crime charged.

. . . .

M.R.U. Crim. P. 16(a) (emphasis added).  We have explained that this Rule requires the State "to disclose certain information in the State's possession or control to a defendant, and to make a reasonable inquiry to uncover material relevant to the case against the defendant," and that "[t]he primary purpose of

the Rule is to protect the defendant from any unfair prejudice." *State v. Mooney*, 2012 ME 69, ¶ 9, 43 A.3d 972 (quotation marks omitted). Imposing disclosure obligations on the State serves to "enhanc[e] the quality of the pretrial preparation of both the prosecution and defense and diminish[ ] the element of unfair surprise at trial, *all to the end of making the result of criminal trials depend on the merits of the case* rather than on the demerits of lawyer performance on one side or the other." *Poulin*, 2016 ME 110, ¶ 29, 144 A.3d 574 (quotation marks omitted).

[¶13] In support of this goal, and to eradicate the practice of requiring defendants to request or even seek court orders to obtain all of the information they need to make decisions about their cases, Rule 16 was amended in 2015 to expand the State's discovery obligations. M.R.U. Crim. P. 1(e); M.R.U. Crim. P. 16 Advisory Note to 2014 amend. In contrast to the version of Rule 16 in place before 2015, Rule 16(a) now requires the State to *automatically* disclose more information to the defendant. *See* M.R.U. Crim. P. 16 Advisory Note to 2014 amend (describing those "matters" that used to be "discoverable only upon the written request of the defendant" that are now automatically discoverable). Although this case began before the change in the Rule, the court and the parties

agreed that the current version, M.R.U. Crim. P. 16(a), applies to these proceedings. *See* M.R.U. Crim. P. 1(e).

[¶14]  Here, there is no real dispute that, upon discovering the information from the former Department employee, the State was required to disclose it.[5]  *See* M.R.U. Crim. P. 16(a)(2)(D).  There is also no dispute that the State did disclose the information to Hassan "[w]ithin hours" after learning it. In its order, the court acknowledged that the State had never withheld or attempted to conceal the information.  The question for us, then, is whether the court was correct in determining that, pursuant to a duty imposed by Rule 16, the State's failure to discover the information from its witness earlier than it did constituted a discovery violation.

[¶15]  We first look to the plain language of Rule 16, which provides that information becomes subject to automatic disclosure when it is in the

---

[5] To the extent that the State argues that because the information at issue consisted of a potential witness's oral statements it "had no obligation to disclose [the former employee's] statements to the defense, especially if the State did not plan to offer the questionable forms into evidence," we reject such a contention.  Rule 16(a)(2)(D) does not define whether information is discoverable based upon the form in which it comes into the State's possession, nor does the Rule draw lines based upon the State's intended uses for that information.  M.R.U. Crim. P. 16(a)(2)(D).  Indeed, 16(a)(2)(D) *requires* the State to disclose "*any matter or information* known to the attorney for the State that *may not be known* to the defendant that tends to create a reasonable doubt of the defendant's guilt as to the crime charged."  (Emphasis added.)  Regardless of how the information comes into the State's possession or control, if it "tends to create a reasonable doubt of the defendant's guilt," it falls within the scope of Rule 16(a) and the State must disclose it in accordance with the timelines set forth in Rule 16(b). *See* M.R.U. Crim. P. 16(a)-(b).

"possession or control" of the attorney for the State.  M.R.U. Crim. P. 16(a)(1).

The Rule's definition of "possession or control" extends to the "attorney for the

State's staff," as well as any State official or employee "who regularly reports or

who, with reference to a particular case, has reported to" the State's attorney.

M.R.U. Crim. P. 16(a)(1).  In compliance with the Rule, the State provided

Hassan with copies of Exhibits 57, 60, and 61 about three years before the

alleged discovery violation.

[¶16]  The court found—and the record supports the finding—that the

State's prosecutors and investigators had no reason to question the

authenticity of these exhibits before the former Department employee

expressed her concerns.  Despite this finding, however, the court determined

that the information suggesting that the documents might not be accurate had

"been in the possession of the State for a significant period of time and ha[d]

not been produced."  This determination reflects a misunderstanding of the

extent of a prosecutor's "possession or control."  *See* M.R.U. Crim. P. 16(a).

[¶17]  There is no allegation or evidence that the State had any

concerns—or any reason to be concerned—about the authenticity or accuracy

of the exhibits before the former Department employee's second pretrial

interview on May 11, 2017.  The court acknowledged that there was "[n]othing

on the face" of the exhibits that made them "initially suspicious." The information about the reliability of the exhibits did not come from a current employee of the Department, let alone from someone who conducted investigations or reported to the attorney for the State regarding Hassan's case. *See* M.R.U. Crim. P. 16(a)(1). The information came from a former Department employee—a potential witness for the State whose signature seemed to indicate that she handled some of Hassan's claims for benefits in 2005.

[¶18] Given these circumstances, the State did not have "possession or control" of the information from the former employee until the second pretrial interview. *See* M.R.U. Crim. P. 16(a)(1). No reading of Rule 16 would support a determination that, because this potential witness was a *former* Department employee, the State had actual or constructive knowledge of the information she shared, and neither the Rule nor our cases impose a duty on the State to disclose information outside its "possession or control." *See Mooney*, 2012 ME 69, ¶ 10, 43 A.3d 972 (holding that a correction officer's testimony conveying her "observations concerning the shanks [does] not fall within the plain language of the Rule"); *State v. Heald*, 393 A.2d 537, 541 (Me. 1978) ("It is unrealistic to require the attorney for the State to be responsible for the production of *any* materials not within his possession . . . ."). In short, the former

Department employee's questioning of some signatures and the handwriting on Exhibits 57, 60, and 61 was not information that was within the scope of Rule 16(a) before the second pretrial interview because that information was "not material that was, or should have been, in the possession or control of the State's attorney." *State v. Foy*, 662 A.2d 238, 242 (Me. 1995); M.R.U. Crim. P. 16(a)(1). The court therefore erred as a matter of law by concluding that the State committed a discovery violation pursuant to Rule 16.

[¶19] The court also erred when it concluded that the State's "duty of reasonable diligence" required it to uncover the information from the former Department employee before the second pretrial interview. We have held that Rule 16 imposes a duty on to the State to "make a diligent inquiry" of its investigators to determine if "automatically discoverable information does exist *in their files*." *State v. Robbins*, 1997 ME 21, ¶ 7, 689 A.2d 603 (emphasis added). The State's duty, however, extends only to matters that are within its "possession or control." *See* M.R.U. Crim. P. 16(a)(1); *see also Poulin*, 2016 ME 110, ¶ 18, 144 A.3d 574 ("The State conceded that the GPS data was subject to automatic discovery pursuant to M.R.U. Crim. P. 16(a) [because] the State's law enforcement officers had been in possession of the data."); *State v. Ledger*, 444 A.2d 404, 409-11 (Me. 1982) (holding that the State violated its

discovery obligations when the State's attorney failed to uncover and disclose a letter that had been in the possession of the State's investigators for more than six months).  Although the State is now required to *automatically* provide more information than it did before the promulgation of M.R.U. Crim. P. 16(a), neither the amended Rule nor our cases impose any requirement that the State interview its witnesses at any particular time in order to search for information the State does not know exists and that is not within its control.[6]  *See Robbins*, 1997 ME 21, ¶¶ 4-7, 689 A.2d 603 (rejecting an argument "to create a due diligence standard for the State's investigation" regarding potential witnesses when "neither the State nor the investigating officer had been aware of" two potential witnesses until the trial began); *Foy*, 662 A.2d at 242.

B.     *Brady* Violation

[¶20]  In 1963, the United States Supreme Court announced that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

---

[6] For these same reasons, we reject Hassan's argument that the State was "derelict" in its "duty to investigate" pursuant to Rule 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), and note that Hassan misrepresented several cases in his brief.  None of the cases he cites stands for the proposition that a prosecutor must—pursuant to his or her duty to uncover automatically discoverable information—investigate matters wholly outside the government's knowledge, possession, or control.

punishment, irrespective of the good faith or bad faith of the prosecution."

*Brady,* 373 U.S. at 87. Seventeen years later, discussing then Criminal Rule 16,

we stated that the Rule's ongoing requirement that prosecutors automatically

disclose "statement[s] describing any matter or information known to the

attorney for the State which may not be known to the defendant and which

tends to create a reasonable doubt of the defendant's guilt as to the offense

charged . . . embodied . . . the constitutional due process of law requirement

articulated initially in *Brady*." *State v. Eldridge*, 412 A.2d 62, 67 (Me. 1980)

(quotation marks omitted).

[¶21] The current version of Rule 16(a)(2)(D) imposes the same specific

duty on prosecutors: they must provide to defendants "any matter or

information known to the attorney for the State that may not be known to the

defendant and that tends to create a reasonable doubt of the defendant's guilt

as to the crime charged." This language, just like the language found in the 1980

version of Rule 16, requires the State to disclose "*Brady*" information, i.e.,

"evidence [that] is material either to guilt or to punishment," which includes

"impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*,

527 U.S. 263, 280 (1999) (quotation marks omitted); *see Eldridge*, 412 A.2d at

67. Because a "true *Brady* violation" can only occur when the State "either

willfully or inadvertently" suppresses this kind of information, *Strickler*, 527 U.S. at 281-82, a prosecutor cannot commit a *Brady* violation without also violating his or her automatic discovery obligations pursuant to Rule 16.[7] *See* M.R.U. Crim. P. 16(a).

[¶22] Furthermore, to ensure that the State learns about and discloses *Brady* information, both *Brady* and Rule 16 require prosecutors to "make a diligent inquiry" of investigators to determine if such "automatically discoverable information does exist in their files." *Robbins*, 1997 ME 21, ¶ 7, 689 A.2d 603; *see Strickler*, 527 U.S. at 281 ("In order to comply with *Brady*, therefore, the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in [a] case, including the police." (quotation marks omitted)). Thus, both Rule 16 and *Brady* impose an obligation on the State's prosecutors to provide information "known to" the State, i.e., information that is within the State's "possession or control." M.R.U. Crim. P. 16(a). An allegation that prosecutors have failed to turn over information that they do not actually or constructively possess or

---

[7] We write to address the alleged *Brady* violation in more detail because the court's order relied on a prosecutor's obligations pursuant to *Brady* when it determined the State committed a discovery violation.

16

control, however, can never serve as the basis for a *Brady* violation.  M.R.U. Crim. P. 16(a).

[¶23]  In this case, even if we assume that the information at issue is "material,"[8] no *Brady* violation occurred.  *See Strickler*, 527 U.S. at 280.  The State provided Hassan with copies of the exhibits about three years before the alleged discovery violation.  As soon as the State learned about potential issues with those exhibits, it promptly provided Hassan with that information.  Thus, although the timing of the discovery and the disclosure was anything but ideal, the State did not suppress or withhold anything from Hassan.  *See State v. Gagne*, 2017 ME 63, ¶ 29, 159 A.3d 316 ("We have held that a defendant who was made aware of potentially exculpatory evidence before trial—even though soon before trial—was not deprived of due process.").

---

[8] An appellate court reviewing a *Brady* claim must determine (1) whether there was evidence that was "favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) whether the State suppressed or withheld that evidence; and (3) whether prejudice ensued, meaning that the evidence was "material" and the suppression or withholding of it had an effect on the fairness or the outcome of the trial because "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *See Strickler v. Greene*, 527 U.S. 263, 281-82, 290 (1999) (quotation marks omitted); *State v. Williamson*, 2017 ME 108, ¶ 22, 163 A.3d 127.  When, as here, there has been no trial, we can only assume that the information fit the "materiality" aspect of a *Brady* claim.  *Strickler*, 527 U.S. at 290.  At the very least, the information at issue in this case was "favorable to" Hassan because, had the State introduced the exhibits, the information was "impeaching."  *See id.* at 281-82; *Williamson*, 2017 ME 108, ¶ 22, 163 A.3d 127.

C.    Conclusion

[¶24]  Because the court erred as a matter of law by concluding that the State committed a discovery violation, it had no authority to sanction the State. *See* M.R.U. Crim. P. 16(e); *Smith v. Rideout*, 2010 ME 69, ¶ 13, 1 A.3d 441.  On remand, Hassan will be afforded the opportunity to use the information at issue here "in the adversarial, truth-determining mechanism of trial."  *Ledger*, 444 A.2d at 412.  We vacate the judgment dismissing the thirteen counts against Hassan with prejudice and remand the case to the trial court.

The entry is:

> Judgment vacated.  Counts 1, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, and 15 of the indictment against Hassan are reinstated and the case is remanded to the trial court.

---

Janet T. Mills, Attorney General, and Leanne Robbin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellant State of Maine

Jamesa J. Drake, Esq. (orally), Drake Law, LLC, Auburn, for appellee Abdi A. Hassan

Androscoggin County Superior Court docket number CR-2013-1422